DANIEL KEITH *vs.* NEW HAVEN AND NORTHAMPTON COMPANY.

</div>

Hampshire.   Sept. 16. — Oct. 24, 1885.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

In an action against a railroad corporation by a brakeman in its employ, for personal injuries caused by a defective ladder on a freight car received from another corporation, while in transit to its place of destination, the defendant's inspector at the place where the car was received testified, that he heard of the accident the same day it occurred; that he had no recollection of having inspected that train, or having seen any defective ladders; and that he did not remember having inspected any particular train before it started out.   *Held,* that it could not be said, as matter of law, that the appearance and conduct of the inspector as a witness, which the jury were instructed to consider, in addition to the evidence that the car was defective and to the testimony of the inspector, would not warrant the jury in finding that he was an incompetent person for such a position.

TORT for personal injuries received by the plaintiff while in the employ of the defendant corporation. Trial in the Superior Court, before *Mason*, J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show that, on November 28, 1883, the plaintiff was a brakeman on a freight train of the defendant, of twenty-three cars, which train left North Adams for New Haven in the afternoon, and while in the Hoosac Tunnel, about two miles east of North Adams, the plaintiff, while, in the line of his duty, descending from the top of a box car, fell to the ground, in consequence of the hand-hold at the top of the ladder giving way, and his foot was crushed by a wheel of the car. The train was composed largely of cars received from other roads, and the car alleged to be defective was not a car of the defendant corporation.

John Sweeney testified that he was the foreman of the defendant's car repair shop, and had general superintendence of car inspection and car repairs; that he furnished the inspector at North Adams with printed instructions before the time of the accident. The material portion of the printed instructions is as follows: "Rule 1. Each road is to deliver the cars to connecting roads in good running order, with journals, boxes, and bearings in good condition, as defined by the following rules. Rule 2. Each road may maintain an inspector at junction stations, and refuse cars unless they are put in good running order. Rule 3. Cars may be refused for any of the following defects: . . . . (*h*) Brake wheels, steps, ladders, or running boards, not securely fastened or in bad condition."

The witness further testified, that one inspector was sufficient for the business at North Adams; that he considered the one there appointed a competent and suitable man for the position; that he had instructed him to refuse all defective cars, and had, in conversation, given him instructions on particular cases from time to time. The witness also testified, on cross-examination, that he had charge of the workmen in the car department in New Haven; that the rules of the Car-builders' Association have no force with companies unless as they are adopted by them, and the defendant never acted on those rules; that the rules do not say that the company shall refuse cars; that Russell,

the inspector at North Adams, came to New Haven once in two or three months; that he, the witness, had been at North Adams but a few times since Russell took charge there in August, 1881.

E. J. Russell testified that he was the car-inspector in the employ of the defendant at North Adams; that he had been so for a few years; that he had been, for fourteen months previously, employed by the Boston, Hoosac Tunnel, and Western Railroad Company, in the same place and in the same capacity, and for seven years prior thereto had worked for the Boston and Albany Railroad Company at Pittsfield, as car-sealer, switchman, and spare car-inspector; that one man was sufficient for the business at North Adams, which would not exceed twenty cars a day to be inspected; that he was hired by a former superintendent, and continued under the present one; that he considered his instructions were in the printed rules, and had acted under them; that he had received instructions from Sweeney what to accept and what to reject; that a car out of repair at North Adams would not be accepted, but if a car of local or important freight required only fifteen minutes' repairs, he would have them made; that the defendant's train men would put in new links if any were broken; that, under instructions from Sweeney, he would reject all cars with defective ladders; that he never accepted cars needing repairs, unless it were a trifling repair, which was made by the defendant's men; that he did not make a charge for a bolt or nut put on, but used his discretion in these matters.

On cross-examination, the witness testified: "We have a list of prices at which we furnish parts necessary for repairs made by our company for other companies. I have a shop at North Adams, ten by sixteen; no power but man power; we have wheels, no axle; some brakes. I do not know that we have any ladders. I would not take a car from other roads only as they had ladders. I never have made any repairs on cars brought here except broken bolts or nuts; other roads would do the same by me; we do make some repairs; there is no charge for a nut; we never charge for five-inch bolts; we never make any charge against companies for cars brought from other roads, and which we repair; we put in boxes for cars sometimes;

when we mind to, we put them in, and when we do not want to, we do not. I heard of the accident that night; they telegraphed back from Shelburne Falls; I have no recollection of having inspected that train; do not remember having seen any defective ladders; I do not remember having inspected any particular train before it started out."

S. B. Opdyke, Jr., testified that he was superintendent of the defendant corporation; that one inspector was ample for the defendant's business at North Adams; that Russell was a competent inspector; that the printed rules are proper instructions to inspectors; and that Sweeney had immediate supervision of inspectors, and the witness the general supervision. On cross-examination, the witness testified: " My duty is to see that all junction points are supplied with suitable inspectors, and that they are furnished with instructions; I was appointed in July, 1883; I am thirty-three years old; Sweeney has charge at New Haven, and he does the bossing, so far as they have any; I furnish those books to give him the instructions; I had sent him no rules before that."

The witnesses were cross-examined at length, but no full minutes of cross-examination were taken. All material parts which the defendant's counsel are able to recall, and all which the plaintiff's counsel, after the fullest opportunity, have suggested, are given in the foregoing statement, and, except the appearance and conduct of the inspector upon the stand, there was no other evidence upon the question whether the defendant provided competent inspectors at North Adams, or upon the question of suitable instruction and superintendence.

The defendant asked the judge to rule, that there was no evidence of negligence on the part of the defendant, and the plaintiff could not recover; that there was no evidence that Russell, the inspector, was not suitable and competent for his position; and that the acts of Russell in evidence in this case could not be considered as any evidence that he was incompetent or unsuitable for his position.

The judge refused the rulings requested, but instructed the jury as follows: " There is no evidence that the car alleged to be defective was the defendant's car, and the case must stand, if it stands at all, solely upon the obligation of the defendant

with reference to cars of other roads coming upon its road. That obligation is to provide, at the point where such cars are received, competent and suitable inspectors, acting under proper instruction and proper superintendence, to examine such cars, and determine whether they are in condition to be received and hauled with reasonable safety. The burden of proof is upon the plaintiff, and he must satisfy the jury, by a fair preponderance of the evidence, either that there was not a competent inspector, or that there was an insufficient number of inspectors, or that the inspector was not acting under proper instructions; that he was not fully instructed what he should do, or that he was not properly superintended in the performance of his duty. Some one of these the plaintiff must prove. It is in evidence, that, at the time of the plaintiff's injury, the inspector, Russell, had been a year and nearly three months in the position he then occupied; that for the previous fourteen months he had occupied a similar position for the Boston, Hoosac Tunnel, and Western Railroad, and for seven years prior to that had been a car-sealer and performed some other duties, and was a spare car-inspector for the Boston and Albany Railroad. It is for the jury to say whether this satisfies them that he had not sufficient preparation and experience to perform the duties of inspector at the time in question. The man himself has been before you, and you have his appearance and conduct upon the stand to assist you in determining whether or not he was a person of sufficient intelligence to be entrusted with so responsible a duty, and of suitable qualifications. It is also argued that the acts of the inspector show his incompetency. The act of an inspector is not in any way evidence of his incompetency, unless the act itself is of a character to indicate ignorance or incapacity; mere neglect does not show incompetency. The most competent and the most suitable persons may do single acts improper and unsuitable. Incompetency cannot be determined from a single act, unless the act itself has a direct tendency to indicate that it arises from incompetency, and not from negligence; as, for illustration, if an engineer were shown to have managed his engine, on a particular occasion from which injury resulted, in such a way as to show that he did not know its parts and had no idea of their use, it would be most significant

testimony as to his competency, but the mere fact that he omitted to do something which he ought to have done would have no such tendency. I cannot say, as matter of law, that the acts of the inspector are not any of them to be considered in determining his competency, but I do say that to show that the inspector was negligent, had failed to do his work, was inattentive to his duty, omitting to make proper inspection, does not show that he was not a competent and suitable person. The defendant is not liable for the inspector's neglect."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*G. M. Stearns & J. C. Hammond*, for the defendant.

*D. W. Bond, (J. B. O'Donnell* with him,) for the plaintiff.

DEVENS, J. The instructions to the jury were full, and were excepted to only so far as there was a refusal to take the case from the jury, upon the ground that there was no sufficient evidence of any want of competent and sufficient inspectors, whom the defendant was bound to provide, or of proper superintendents, and proper instruction of them. As the car, by a defect in which the injury of the plaintiff was received, came from another road, the duty of the defendant was, not to furnish a proper instrumentality, but to make proper inspection, and this duty was performed by the employment of sufficient, competent, and suitable inspectors, acting under proper superintendence, rules, and instructions. *Mackin* v. *Boston & Albany Railroad*, 135 Mass. 201.

The jury were permitted to consider the appearance and conduct of the inspector, who was called as a witness, to aid them in determining whether he was a person of suitable qualifications and of sufficient intelligence to be entrusted with so responsible a duty. What this appearance and conduct were, and how they would be likely to impress a jury, are matters that are not reported, and from their nature cannot be. It is impossible for us to say that, in addition to the other evidence, — as that which tended to show that the car was defective, that, although informed of the accident on the same night, the inspector had no recollection of having inspected the train or having seen defective ladders, and that he did not remember having inspected any particular train before it started out, — his appearance and

conduct in the presence of the jury might not be legally suffi-
cient to satisfy them that he was an incompetent person. In
*Commonwealth* v. *Emmons*, 98 Mass. 6, a jury were permitted
to find, from the appearance of a young man, without other
evidence, that he was not twenty-one years old. The same
principle applies where the inquiry, as in the case at bar,
relates to intelligence and understanding, as well as to physical
capacity.

It was held in *Tully* v. *Fitchburg Railroad*, 134 Mass. 499, 503,
that the fact that the jury, in most cases of a view, acquire a
certain amount of information which they may properly treat as
evidence, presents no insuperable obstacle to the granting a new
trial on the ground that the verdict was against the weight of
evidence. A new trial was granted in that case for the reason
that the court was unable to see that " the jury, from the view,
could have acquired any knowledge of material facts which
were not put in evidence in court, or that the presiding justice
could have supposed that they had such knowledge." The case
at bar is the converse of the one cited. It may well have been
that the jury did acquire a knowledge of material facts as to the
intelligence of the inspector by his examination as a witness.

*Exceptions overruled.*