MARSHALL B. PEASLEE *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.    March 7, 1890. — September 4, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Negligence — Railroad — Death of Employee — Presumption — Rules for moving Trains.*

In an action on the Pub. Sts. c. 112, § 212, as amended by the St. of 1883, c. 243, against a railroad company for causing the death of an employee through the negligent employment of an incompetent locomotive engineer, there was no evidence of the engineer's incompetency aside from the single act of negligence of his causing the death, and it did not appear that his conduct and appearance as a witness before the jury were such as to justify such inference. *Held*, that the company could not be said to have been negligent in employing the engineer in that capacity, and that a verdict was properly directed for the defendant.

The rules of the company provided, that in the night, at which time the accident occurred, the signal for starting trains was to be made by a peculiar motion of a lantern. This signal was not given at the time of the accident; but the engineer hearing an oral order to "go ahead," and incorrectly supposing that the order was intended for him, started his engine, causing the death. *Held*, that there was no evidence that the absence of proper rules caused the accident.

TORT, under the Pub. Sts. c. 112, § 212, as amended by the St. of 1883, c. 243, by the administrator of the estate of George L. Thompson, for causing the death of his intestate, on August 27, 1887, while the latter was in the defendant's employ. Trial in the Superior Court, before *Hammond,* J., who allowed a bill of exceptions, which, so far as material to the points decided, was as follows.

There was evidence tending to prove the following facts. Thompson was at the time of his death in the employment of the defendant corporation as a fireman on a locomotive engine. Between two and three o'clock in the morning of August 27, 1887, his engine, of which William E. Musgrave was the engineer, stood on a track in the freight-yard of the defendant at Fitchburg, attached to a freight train which had just been made up and was about ready to start. The night was a dark one, and the freight yard was unlighted. This freight train and its engine stood on the main track, so near its junction with a side track diverging from it that at the time an engine could not pass from the side track to the main track without coming in contact with the freight engine. A switching engine, belonging to the defendant corporation, of which one Taylor was the engineer, employed by the defendant, had just been engaged in making up the freight train, and had then been backed up upon the side track and there stood a short distance from the engine of the freight train. Thompson at the time was engaged in oiling the machinery of the freight engine, and stood beside the engine facing it with his back to the side track. At that moment the conductor of the freight train, who stood a little to the rear of the switching engine, called out to Musgrave, " All right; go ahead, Bill." Taylor heard the words " go ahead," but did not distinguish the name, and, without waiting for further information, supposing that the order was intended for himself, started the switching engine, although the switch at the junction of the two tracks was open and turned against him, and, the switching engine coming in contact with the freight engine, Thompson was crushed between them and killed.

Taylor, who was called as a witness, testified that he had been in the employment of the defendant on different occasions for about ten years as a fireman, and, for the eight months imme-

diately preceding the accident, as a spare engineer on freight trains·, that he ran the switching engine for the first time on the night in question, being ordered to do so by the proper official, in the absence of its regular engineer; that he had had the same training as other engineers had, and knew of no other course of instruction received by an engineer which he did not receive; that the accident in question was the first of any kind that had ever happened to him since he had entered the defendant's employment; that he had never been employed in the freight-yard in the night-time, and was not familiar with the yard; that there was no particular skill required in a switching engineer that was not required in any engineer on the road; and that it was his duty simply to obey orders, the switches being set for him for the track on which he was to go. The bill of exceptions did not allude to the appearance or conduct of Taylor before the jury, or contain any comment thereon by the presiding judge.

There was evidence that, by the rules and regulations established by the defendant company and by it duly promulgated among its employees, the night signal for starting a train ahead was to be made by swinging a lantern from a perpendicular position beside the body forward and upwards in the direction the train was to move, describing a quarter-circle; and that there was no other rule established in respect to the starting of trains by signals. The rules further provided, "All signals must be regarded, and any wilful or careless neglect of these rules will be followed by immediate dismissal."

The judge ruled, as matter of law, that the jury would not be warranted in finding a verdict for the plaintiff, and ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*B. F. Brickett & W. H. Moody*, for the plaintiff.

*G. A. Torrey*, for the defendant.

W. ALLEN, J. The plaintiff contends that the death of his intestate was caused by·the negligence of his fellow servant, Taylor, an engineer in charge of a locomotive engine; and that there was evidence that Taylor was an incompetent person for the service in which he was engaged, and that the defendant was negligent in employing him in that service, and also that there was evidence that the defendant was negligent in not

providing proper rules and instructions for the government of Taylor's conduct in the performance of the duty in which he was engaged.

Taylor's immediate duty, in reference to which his capacity and the rules given to govern his conduct are to be judged, was to keep his engine stationary until ordered to move it, and then to move it as ordered. His engine was so situated in reference to an engine on another track, that, by moving it ahead a short distance, it would be brought in contact with the other engine. Taylor heard part of an oral order intended for the engineer on the other engine, and, supposing it to be an order for himself to go ahead, started his engine ahead until it came in collision with the other engine, and caused the death of the plaintiff's intestate. There was no evidence that Taylor was not a proper person to be in charge of an engine, except his conduct at the time of the occurrence in question. There was evidence that he had been in the employment of the defendant for about ten years as fireman upon an engine, and for eight months preceding the accident as engineer. It is argued that Taylor was a witness before the jury, and that they had a right to determine from his appearance that he was so manifestly incompetent that the defendant was negligent in employing him as engineer. There is nothing in the exceptions to show that there was anything in the appearance of the witness that would justify such an inference ; and it cannot be presumed that there was. *Keith* v. *New Haven & Northampton Co.* 140 Mass. 175, only decided that, with other evidence of incompetency, the appearance and conduct of the party before the jury might be considered. In the case at bar, the only evidence of incompetency was the single act of negligence, and the exceptions do not show, and it cannot be presumed, that the appearance and conduct of the party before the jury furnished evidence that the defendant knew, or ought to have known, that he was incompetent. The ruling of the court that there was not sufficient evidence will not be set aside unless it appears that there was some evidence.

We think that the evidence in the case was insufficient to prove that the defendant was negligent in employing Taylor in the service in which he was employed.

The plaintiff contends that the accident was caused by an

imperfect system of signalling in use by the defendant.   So far as concerns this case, the signals are confined to those affecting the starting of the two locomotives, the one attached to the freight train ready to start, of which the plaintiff's intestate was fireman, and the switching engine, of which Taylor was engineer; and the only signal called for or used was that to "go ahead."   The night signal to " go ahead," according to the rules of the defendant, was a particular motion of a lighted lantern. That signal was not given, and no question as to its sufficiency arises.   The plaintiff contends that the defendant was negligent in not providing also a system of voice signals or oral orders for starting trains and engines.   We need not consider whether the absence of rules providing for such orders was any evidence of negligence in the defendant, because such an order was in fact given, and the accident arose from the fact that Taylor did not understand it.   The evidence was that the conductor of the freight train called to his engineer to go ahead, that Taylor heard the words " go ahead," and some other words which he did not understand, and, without waiting to find what they were, applied the order to himself, and started his engine.

The evidence tends to show that the order given by the conductor designated his own train, and that the thing was done in fact which the plaintiff contends should have been done by rule.   But it is immaterial what this part of the order was, because Taylor did not understand it, and it could not have affected his conduct.   The signal required by the rules of the defendant was not given, and the signal actually given was not heeded.   There is no evidence that the absence of proper rules caused the accident.

*Exceptions overruled.*