THERESA F. CONNORS *vs.* CHARLES T. GRILLEY.

Suffolk.    November 17, 1891. — February 25, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Dangerous Machine — Negligence — Due Care — Evidence.*

A girl seventeen years old was set to work in the afternoon by her employer, without instructions, on a machine for skiving leather, and she undertook to run it as another operative had done. It was not unusual for the machine to be

stopped by the leather catching in it, and the rule was that a workman should then be called. She called this workman the next day, and he relieved the machine. A few minutes later, she called him again, and, upon his relieving the machine, he swore at her in her employer's hearing, and told her, "If this machine gets stuck again, fix it yourself." She was going to ask a few questions of her employer, but he shook his head and hands, and refused to listen, saying, "No, no, no ; if you do not work fast, I will send you home." This frightened her, and she worked faster, and when the machine was stuck again she tried to relieve it, as she had seen the others do, and was injured. In an action against the employer for such injuries, the evidence was that she was a very dull girl, and was slow in her work as compared with the other girls ; and she was cross-examined at great length before the jury. *Held,* that the questions whether the defendant was negligent in thus setting her to work, and whether she was in the exercise of due care, were properly submitted to the jury.

In an action for personal injuries received by the plaintiff, a girl seventeen years old and inexperienced, while at work on a machine in the defendant's employ, she was cross-examined at great length before the jury, and there was an open intimation that she was feigning ignorance or dulness. *Held,* that it was within the discretion of the presiding judge to admit testimony from the plaintiff's former school teachers that she was an unusually dull girl.

At the trial of an action for personal injuries received by the plaintiff while in the defendant's employ, the presiding judge instructed the jury, as requested by the defendant, " that the burden of proof is on the plaintiff to show both her own due care, and negligence on the part of defendant, which negligence caused the accident," and declined to give the further instruction, " and that if the jury are left in doubt on these propositions, or either of them, they must find for defendant." *Held,* that the defendant had no ground of exception.

TORT, for personal injuries occasioned to the plaintiff, a girl seventeen years old, while at work on a skiving machine in the defendant's factory. The declaration as amended alleged that the plaintiff was of less than the average mental capacity of girls of her age, that the defendant knew or had reasonable cause to know of this fact, and that he was therefore negligent in not instructing her as to the danger of performing the act which caused her injuries.

At the trial in the Superior Court, before *Sherman,* J., it appeared in evidence that the skiving machine was operated by steam power, and its function was to reduce the thickness of leather used in making washers for carriages, which was passed between two rollers and against a knife placed just behind and between the rollers ; that in front of the rollers was a box or guard put there by the defendant to prevent the operative's hand from being drawn into the rolls and to facilitate the work ; that this box when in position cut off the view of the rollers from the operative while sitting in front of the machine, her

position while at work; that the leather, on being put through the box, was seized by the rollers and drawn against the knife, and then passed entirely through and dropped into a basket; that it was not unusual for the skiving machine to become clogged by pieces of leather passing between the rolls and bringing up against the knife, and to be entirely stopped; and that on October 29, 1887, while the plaintiff was at work on the machine, it became clogged and stopped, and in trying to relieve it her hand was caught, and she was injured.

The plaintiff on direct examination testified: " Worked at the skiver only one afternoon before the day I was hurt; this was a few days before the accident; worked there with Miss Simmons. The defendant came to me and said, ' Come, Theresa,' and took me to Miss Simmons, and said, ' Here is Theresa, Gertie.' Put the leather in front of the machine as Miss Simmons did. The pieces of leather used by. me were about two inches square, but were of irregular shape. The leather got stuck several times, and Miss Simmons went behind the machine and pushed back the box, and reached her hand over and took out the leather; this happened several times. On the day of the accident, the defendant came over to me and said, ' Come, Theresa,' and he brought me down to the skiver. He took Miss Simmons off and put me on, and said, ' Work at that.' He gave me no instructions how to work it, or what to do when the machine got stuck. He did n't tell me about any knife being in there. Put the leather into the machine as Miss Simmons did. When the leather got stuck, called Mr. Heckman, and he came over and relieved the machine. He went behind the machine while I remained seated in front of it, pushed back the box, and took out the leather. A few minutes afterwards, the leather got stuck again; called Mr. Heckman the second time. He came over and relieved the machine in the same manner, swore at me, and said to me, ' If this machine gets stuck again, fix it yourself.' The defendant was within hearing of what Mr. Heckman said. Saw the defendant going to some part of the shop, and I was going to ask a few questions of him, but he shook his head and hands, refused to listen, and said, ' No, no, no; if you do not work fast, I will send you home.' So he frightened me, and I worked faster. When the machine

got stuck again I went behind the machine, as I saw Miss Simmons and Mr. Heckman do, I pushed the box like that, put my left hand in like that, reached over and took hold of the leather, and then my hand drew in and I hallooed. Had been at work at the machine about an hour before the accident that morning."

The plaintiff was then cross-examined at great length, this part of her examination covering over fourteen printed pages of quarto size, in the course of which counsel suggested, in the questions put to her, that she was pretending to be either dull or ignorant.

Elizabeth M. Wood, a former school teacher of the plaintiff, was permitted to testify, against the defendant's objection, that the plaintiff, although very faithful, made scarcely any progress in her studies during the two years the plaintiff was under her charge, and that " she ranked very low in comparison with the girls of her years."

Catharine M. Lynch, also a former school teacher of the plaintiff, was permitted to testify, also against the defendant's objection : " The plaintiff was under me for one year. Her work was almost a total failure. She was very faithful and conscientious in her attempt to do her work. Regarded her as extremely dull ; her intelligence, as compared with other girls of the same age, was far below the average."

The defendant testified : " Prior to and at the time of the accident there was a rule in the shop that, if leather got caught in the machine, or anything was needed at the machine, Mr. Heckman should be called. There was no risk attending the relief of the machine if it was properly done. . . . I set her to work at the skiving machine with one of the other girls. I told her to do nothing but put leather through the guard. Subsequently, I saw the plaintiff at work at the skiver very frequently, either alone or with somebody. I saw no lack of diligence or success in running the machine, but she was slow. I never saw her or any girl try to take out leather from the rolls. . . . When I came to the shop on the day of the accident, the plaintiff was at work on the skiving machine. I then told her to do nothing except to feed the machine, and to call Mr. Heckman if anything else was needed. I then called him and told him in her

presence what I had told her. Later in the morning I found her working slowly, and took her to task. . . . The plaintiff never complained to me of Mr. Heckman, and I had no knowledge of any complaint. I never prevented her saying anything to me. I did say to her that I would send her home if she did not work faster, and I may have held up my hands and said, No, no. I never had any knowledge or belief that she had less than ordinary intelligence of a person of her age, and never saw anything to indicate such a state of facts."

Heckman testified : " Have seen the plaintiff at work with the other girls in the shop. She did not work quite so fast as the other girls on the skiver. Never saw anything to indicate that she was of less than ordinary intelligence of girls of her age. . . . She called me three times the morning of the accident. The first two times I went over and relieved the machine, finding leather stuck in about the same place near the bearings. Told her each time to be more careful. The third time she called me I found the leather stuck in the same place. I then swore at her, which I ought not to have done. . . . Did not tell her, if the machine got stuck again, to fix it herself."

Upon the. evidence, the defendant requested the judge to instruct the jury :

" 1. To return a verdict for the defendant.

" 2. That there is no evidence that the defendant had knowledge, or information, or reasonable cause to know or believe, that the plaintiff was of less than the average mental capacity of girls of her age.

" 3. That there is no evidence that the plaintiff was not capable of appreciating the danger of putting her hand upon or near the machine in motion.

" 4. That if the plaintiff was injured while engaged in removing leather from the rolls, she cannot recover.

" 5. That the burden of proof is on the plaintiff to show both her own due care, and negligence on the part of defendant, which negligence caused the accident (and that if the jury are left in doubt on these propositions, or either of them, they must find for defendant)."

The judge declined to give these instructions except the first part of the fifth, and gave that instruction except that portion in parentheses.

The jury returned a verdict for the plaintiff; and the judge, at the defendant's request, reported the case for the determination of this court.

*R. M. Morse*, (*M. Morton* with him,) for the defendant.

*S. J. Elder & J. F. Wheeler*, for the plaintiff.

ALLEN, J. We do not see that the judge would have been warranted in withdrawing the case from the jury.

Looking only at the testimony in support of the plaintiff's claim, it might be found that she was in the exercise of due care. According to testimony which the jury might believe, she was seventeen years old, inexperienced, having worked on a skiving machine only one afternoon before the day when she got hurt. The defendant set her at work upon the machine without instructions. She undertook to do as Miss Simmons had done. There was a rule that if leather got caught Heckman should be called. It did get stuck, and she called him, and he came and relieved the machine. A few minutes afterwards it got stuck again, and she called him, and he came and relieved the machine, and swore at her, and told her, " If this machine gets stuck again, fix it yourself." This was within the defendant's hearing. She was going to ask a few questions of the defendant, but he shook his head and hands, and refused to listen, and said, " No, no, no; if you do not work fast, I will send you home." So he frightened her and she worked faster, and when the machine got stuck again she tried to relieve it as she had seen Miss Simmons and Heckman do, and her hand got caught. It was not very unusual for the machine to get stopped by leather catching in it.

This testimony was contradicted in some respects, but in some important particulars it was confirmed. Contradictions are not for us; the jury may have believed the testimony most favorable to the plaintiff. *Glover* v. *Dwight Manuf. Co.* 148 Mass. 22.

The jury might also find the defendant negligent in setting her at work upon the machine without more full instructions. As to her need of instructions, the defendant and Heckman both testified that she was slow in her work as compared with the other girls. Heckman had sworn at her, and the defendant had taken her to task, saying if she did not work fast he should

send her home. Her cross-examination before the jury was long, and might materially aid them in judging of her capacity. Two of her former school teachers testified, in substance, that she was a very dull girl. The jury might find that she stood in need of special instruction as to the danger of the machine, and that the defendant was or ought to have been aware of it. The admission of questions for the purpose of showing the general capacity and intelligence of a plaintiff may depend on circumstances which can best be determined by the judge who presides at the trial. In *Leistritz* v. *American Zylonite Co.* 154 Mass. 382, such questions were excluded, under the peculiar circumstances of that case, and we held that such exclusion was no sufficient ground for a new trial. In the present case the questions were allowed, and we think the allowance of them was not erroneous. The plaintiff had been cross-examined at great length before the jury, and there was an open intimation that she was feigning ignorance or dulness. In connection with her appearance and testimony, her age and inexperience, the admission of evidence that her teachers had found her an unusually dull girl was within the discretion of the presiding judge. See *Keith* v. *New Haven & Northampton Co.* 140 Mass. 175; *Peaslee* v. *Fitchburg Railroad*, 152 Mass. 155.

The omission to give the latter part of the fifth instruction requested was right.                    *Judgment on the verdict.*