ATCHISON, T. & S. F. R. CO. v. MYERS.

(Circuit Court of Appeals, Seventh Circuit. October 25, 1894.)

No. 120.

1. REVIEW ON APPEAL—MOTION FOR PEREMPTORY INSTRUCTION—WAIVER.
    A defendant who introduces evidence in defense thereby waives his motion to instruct the jury at the close of plaintiff's case to find for the defendant.

2. SAME—BILL OF EXCEPTIONS—PRESUMPTION AS TO COMPLETENESS.
    In the absence of a statement to that effect a bill of exceptions is presumed not to contain all the evidence.

3. EXPERT EVIDENCE—COUPLING CARS.
    Expert evidence is not competent to prove that a particular mode of coupling cars is specially dangerous.

4. MASTER AND SERVANT—RAILROAD COMPANY—INSPECTION OF FOREIGN CARS.
    A railroad company is not responsible to its switchman for injuries caused by defects in a foreign car, if it has inspected the car, and warned him of its defects.

5. SAME—RISKS OF EMPLOYMENT—INSTRUCTIONS.
    Where a switchman sues for injuries caused by a defective foreign car, the jury should be instructed as to his assumption of the usual hazards of the service.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This was an action on the case by William Myers against the Atchison, Topeka & Santa Fé Railroad Company. Plaintiff obtained judgment. Defendant brings error.

This action was begun by William Myers in the circuit court of Hancock county, Ill., and was removed by the plaintiff in error into the circuit court of the United States for the southern district of Illinois on account of the diverse citizenship of the parties. It was brought to recover damages for the loss of his arm, which was crushed between the deadwoods of two foreign cars which Myers was attempting to couple in the railroad yards at Streator, where he was employed as a switchman. The declaration contained three

counts. The defect complained of was alleged to consist in the unsafe and dangerous condition of the deadwoods on the moving car, which was unknown to plaintiff, in that one of the bolts which fastened the deadwood to the car was broken, or its nut had come off, so that the outer end of the bolt was loose, and projected about four inches, making the same extremely dangerous. That, in making the coupling in the usual and ordinary manner, it was necessary to step between the cars, and lift the link in the standing car, and enter it in the drawbar of the moving car as it came against the standing car, and then quickly raise the arm up so as to avoid injury from the contact of the deadwoods. That in making the coupling the plaintiff placed himself in the proper position, and held the link until the moving car came close enough to allow the entrance of the link into the drawbar, and then attempted quickly to raise his arm out of danger; but his arm and sleeve were caught by the broken bolt in the deadwood, and held until the deadwoods, coming together, forced the bolt entirely through his arm, and crushed it so it had to be twice amputated. He alleged that he used due care to avoid injury. He avers that it was the duty of the defendant to have and keep the car in safe repair, which it negligently failed to do. In the third count he alleges that he believed the car was in safe condition and good repair, and that he acted on such belief in making the coupling.

It was shown on the trial that the defendant in error was injured a few minutes after 4 o'clock p. m. of February 22, 1890, while it was yet broad daylight. He had worked as a railroad brakeman and switchman for three years, and began switching in the Streator yards in January, 1890. His duty as switchman was to go on and about the cars in the yard; to assist in transferring them; to couple and uncouple cars, and do all such work in connection with the trains, cars, and yard as might be required, and, as such, that it became his duty to make the coupling in which he was engaged when injured. A Delaware, Lackawanna & Western car had the loose bolt. The deadwoods on it came out even with the drawbar, and were 12 to 18 inches wide and about 18 inches up and down. They were fastened to the car with four or six bolts. He first saw this car in the Santa Fé yard on the morning of the day of the accident. He heard the car inspector make a statement that morning in relation to this car. It was about 7 o'clock in the morning, and he was close to it. The foreman, Branz, and the yard master, Case, were present. The car inspector said the car was in bad order. He told Mr. Case: "Case, this car is in bad order, and we have no right to fix the car." The yard master had charge of the switching, and Branz, foreman of the switch engine, acted under him, and plaintiff received his orders from the foreman. The car inspector marked both sides of the car, with chalk: "Bad order. Return to 'Three I.'" Myers saw the car in the yard two or three times during the day. The accident occurred on the "Three I" Y, which connects the Santa Fé with the Wabash Railroad. The car came from the "Three I" Railroad. He knew the car was to be taken back where it came from, and that it was set out for that purpose. Mr. Whalen was car inspector at Streator. He had been car inspector of the Santa Fé 12 years. He saw this car in the Santa Fé yards on the morning of February 22, 1890. He inspected the car, and marked it: "Bad order. Return to 'Three I.'" The brake connections were defective. That was all that he found wrong. He looked this car over when inspecting it, and found no other defect. The plaintiff testified that his sleeve and arm were caught, while attempting to couple the cars, by a bolt which projected about two or three inches from the deadwood of this foreign car, and in consequence he could not remove his arm in time to avoid the injury. He claimed that he did not know of the defect, and that the coupling was required to be made so quickly that he had no opportunity to discover it. His arm was crushed between the elbow and wrist, and was twice amputated above the elbow. On the trial the plaintiff in error called William Reilly, a yard master of the Wabash railroad, who had had 30 years' experience as switchman and yard master, and asked him what his duties as yard master were with relation to coupling and uncoupling cars, and the manner of doing the same; and, upon objection thereto, counsel stated that he offered to prove in answer to the question the following: "I offer to prove by the witness that, in coupling cars such as these two

were, it was both unusual and unnecessary, and especially dangerous, for a person to attempt to make the coupling by placing his arm between the deadwoods, and that the usual and proper way to make it would be to lift the link by reaching over and above the deadwood, or under and around the deadwood." Leave to prove facts as above stated was denied by the court, to which ruling the plaintiff in error excepted. When the defendant in error rested his case the plaintiff in error moved the court to take the case from the jury, on the ground that a prima facie case for recovery had not been made out. The court overruled the motion, and an exception was reserved. At the conclusion of the evidence the plaintiff in error again moved the court to give the jury a binding instruction to return a verdict in its favor, which motion was overruled and an exception taken.

During the closing argument to the jury, counsel for defendant in error said: "Even if they had no report [referring to the Santa Fé road], they can, by their books, trace that car from that moment to the present day. They can go to that other company, and find out where that car was every hour from the time this injury occurred up to the present time. They can show where it was repaired, if it was repaired, and, if it was not repaired, they can show that fact by competent evidence. They have not done it. They can go to the Wabash, or the road it belongs to, where every number of the cars is kept in a book, and every time it is inspected is recorded, and they can bring that report here, and show whether there was a bolt loose there at that time. If there was no bolt loose there at that time, and no bolt loose since that time, they can show that fact, and it would be pretty strong evidence that this man was mistaken." Specific objection was made to the foregoing statement on the ground that there were no such facts in evidence before the jury, but the court declined to interfere, to which the plaintiff in error excepted.

Among the instructions given by the court, and excepted to by the plaintiff in error, was the following: "It is the duty of the defendant to furnish its employés with proper machinery or instrumentalities for their use in the work assigned them, and to see to it that they are kept in a reasonably safe condition, or in reasonable repair. And when an employé, in the proper and diligent discharge of his duty, is injured from the negligent failure of the company to perform this duty, it is liable." At the proper time the plaintiff in error asked the court to give three written instructions to the jury. The third instruction is the only one which it is necessary to set out. It is as follows: (3) "The plaintiff was employed by the defendant as a switchman in its railroad yards at Streator, and as such it became and was his duty to couple and uncouple the cars handled by the defendant there. By accepting such employment, he assumed its natural and usual risks and hazards, and, if you believe from the evidence in this case that the injury which the plaintiff received was due to the natural and usual hazards and risks of his employment there as switchman, then the plaintiff cannot recover in this action, and your verdict should be for the defendant." The court refused to give the above instruction, and a proper exception was reserved.

Edgar A. Bancroft and Eldon J. Cassoday, for plaintiff in error.

A. W. O'Hara, Timothy J. Scofield, M. J. Wade, and Burns & Sullivan, for defendant in error.

Before WOODS, Circuit Judge, and BAKER and SEAMAN, District Judges.

After making the foregoing statement the opinion of the court was delivered by

BAKER, District Judge. No available error is presented by the refusal of the court, at the conclusion of the evidence of the defendant in error in opening his case, to instruct the jury to return a verdict for the plaintiff in error. The plaintiff in error did not stand upon the ruling of the court, but having elected to proceed with the

case and introduce its evidence, and take the chances of a verdict in its favor, it has waived its right, if any it had, to avail itself of the alleged error in the ruling of the court. Railroad Co. v. Charless, 2 C. C. A. 380, 51 Fed. 562; Elmore v. Grymes, 1 Pet. 469; De Wolf v. Rabaud, Id. 476; Crane v. Morris' Lessee, 6 Pet. 598; Silsby v. Foote, 14 How. 218; Castle v. Bullard, 23 How. 172; Railway Co. v: Cummings, 106 U. S. 700, 1 Sup. Ct. 493; Insurance Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685; Insurance Co. v. Smith, 124 U. S. 405, 8 Sup. Ct. 534; Bogk v. Gussert, 149 U. S. 17, 13 Sup. Ct. 738; Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591.

And, if the plaintiff in error had elected to stand upon the ruling of the court in refusing to instruct the jury to return a verdict in its favor, no available error would be presented, because the bill of exceptions does not affirmatively show that the evidence embodied in the record is all the evidence that the plaintiff had introduced at the close of his opening of the case. If the alleged error was otherwise available, it could not be considered by us, unless it is made to appear that the entire evidence which had been introduced by the plaintiff at the close of his opening of the case was brought here by a proper bill of exceptions. No principle of law and no rule of court requires the entire evidence to be embodied in a bill of exceptions, and hence the presumption is that the bill of exceptions does not contain all the evidence before the court at the time the motion was made. To overcome this presumption the bill of exceptions should contain a statement, at the close of the plaintiff's evidence in opening, to the effect that the above and foregoing is all the evidence given by the plaintiff at the time the motion was made.

At the close of the evidence the plaintiff in error asked the court to give a binding instruction to the jury to return a verdict in its favor. The defendant in error insists that this alleged error is waived because the plaintiff in error asked the court to give a number of instructions upon other points upon which it relied for defense, and took its chances of securing a favorable verdict from the jury. It is not necessary to determine whether or not a prayer for a binding instruction is waived by the defendant for the reasons above stated, and we decline to express any opinion on the question. The assignment is unavailing, for the reason that the bill of exceptions before us does not affirmatively show that it contains all the evidence given on the trial of the cause, and without that we cannot say that the court erred in its ruling.

It is insisted that the court erred in refusing to permit the plaintiff in error to prove that in coupling the cars it was both unusual and unnecessary, and especially dangerous, for a person to attempt to make the coupling by placing his arm between the deadwoods, and that the usual and proper way to make it was to lift the link by reaching over and above, or under and around, them. The witness Reilly was an expert, and was called to testify as such. His knowledge and experience fairly entitled him to that position, if the subject on which he was called to testify was a proper one for expert testimony. It is no objection that the expert is asked a question involving the one to be decided by the jury. It is upon sub-

jects requiring special knowledge or experience, on which the jury are not as well able to judge for themselves as is the witness, that an expert is permitted to testify. Evidence of this character is most frequently given upon matters requiring medical skill or scientific knowledge, but it is by no means limited to that class of subjects. It is competent upon the question of the value of land (Bearss v. Copley, 10 N. Y. 93); or in regard to the value of a particular breed of horses (Harris v. Railroad Co., 36 N. Y. Super. Ct. 373); or upon the value of professional services (Jackson v. Railroad Co., 2 Thomp. & C. 653); or on questions involving nautical skill (Moore v. Westervelt, 9 Bosw. 558); or on the necessity of a jettison (Price v. Hartshorn, 44 N. Y. 94); or in regard to the proper and usual way of removing paint (First Congregational Church v. Holyoke Mut. Fire Ins. Co., 158 Mass. 475, 33 N. E. 572); or to show that it was good seamanship and prudent, under the circumstances, to have a vessel towed (Insurance Co. v. Smith, 124 U. S. 405, 8 Sup. Ct. 534); or to show the usual manner of making the coupling of cars (Hamilton v. Railway Co., 36 Iowa, 36, on page 37; Railway Co. v. Husson, 101 Pa. St. 1; Railway Co. v. Johnson, 38 Ga. 409, 435; O'Malley v. Railway Co., 43 Minn. 289, 45 N. W. 440; Simms v. Railway Co., 26 S. C. 490, 2 S. E. 486; Railroad Co. v. Smith, 22 Ohio St. 227; Crutchfield v. Railway Co., 78 N. C. 300; Doyle v. Railway Co. [Minn.] 43 N. W. 787).

But conceding that it was competent for the witness to have testified in regard to the usual, or the usual and proper, way of making a coupling with a car having deadwoods, still we do not think any available error was committed in rejecting the offered testimony. The offer must be treated as an entirety, and if any part of it was inadmissible the court committed no error in rejecting the entire offer. The court was under no obligation to separate that which was admissible from that which was inadmissible. It was not competent for the witness to testify that it was unnecessary, and especially dangerous, to make the coupling in the manner in which it was made. When the jury were informed in regard to the manner in which the coupling in question was made, and also in regard to the usual and proper way in which to make it, they could determine as well as the expert whether or not the method adopted was unnecessary, and especially dangerous. It was a question for the jury alone to determine, when the circumstances attending the coupling, and the usual manner of making it, were in evidence, whether or not the defendant in error adopted a method of coupling which was unnecessary, and especially dangerous.

It is the duty of the court to control and direct the argument of counsel in the interest of justice, and whenever counsel, especially in the closing argument, overpass the limits of fair debate, either by stating as facts matters not in evidence, or by making unwarranted charges against parties or witnesses, to the manifest perversion of justice, the court ought unhesitatingly to interfere, and see to it that the guilty party takes no advantage from his wrong. When the party who is injured by the wrong invokes the protection of the court by an objection, it will not do for the court to remain silent,

leaving the matter of misconduct with the offending party and the jury. The court is bound to interpose when called upon, and, if an improper and injurious statement has been made without excuse, the effect of it should be erased from the minds of the jury, at the time, by a clear and emphatic admonition from the court. Manifestly, this court can lay down no definite rule on the subject. It will not in any case be presumed that the discretion over this subject committed to the trial court has been abused. Upon a careful consideration, we are unable to say that the court abused its discretion in refusing to interpose in consequence of the statements of counsel appearing in the record.

Touching the company's duty to furnish its employés with cars fit for use and in proper repair, the court said:

"It is the duty of the defendant to furnish its employés with proper machinery or instrumentalities for their use in the work assigned them, and to see to it that they are kept in a reasonably safe condition, or in reasonable repair. And when an employé, in the proper and diligent discharge of his duty, is injured from negligent failure of the company to perform this duty, it is liable."

The master's duty requires him to exercise ordinary and reasonable care, having regard to the hazards of the service, to furnish his servants with reasonably safe appliances, machinery, tools, and working places, and also to exercise ordinary and reasonable care at all times to keep them in a reasonably safe condition of repair. He is under no absolute obligation to furnish safe instrumentalities and working places, nor is his duty an absolute one to keep them in a safe condition of repair. He is not an insurer of their safety. Referring to the cases of Hough v. Railway Co., 100 U. S. 213, 217; Railroad Co. v. Herbert, 116 U. S. 642, 647, 648, 6 Sup. Ct. 590; Kane v. Railway Co., 128 U. S. 91, 94, 9 Sup. Ct. 16; Jones v. Railroad Co., 128 U. S. 443, 9 Sup. Ct. 118,—the supreme court, in Railroad Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, say:

"The general principles of law by which the liability of an employer for injuries to an employé, growing out of defective machinery, is tested, are well settled by those decisions. Neither individuals nor corporations are bound, as employers, to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employés. Nor are they bound to supply the best and safest or newest of those appliances for the purpose of securing the safety of those who are thus employed. They are, however, bound to use all reasonable care and prudence for the safety of those in their service, by providing them with machinery reasonably safe and suitable for the use of the latter. If the employer or master fails in this duty of precaution and care, he is responsible for any injury which may happen through a defect of machinery which was, or ought to have been, known to him, and was unknown to the employé or servant. But if the employé knew of the defect in the machinery from which the injury happened, and yet remained in the service, and continued to use the machinery, without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is entitled to no recovery."

The rule of duty embodied in the charge will be found stated in substantially the form employed by the court in numerous decisions, and while, as an abstract proposition, in cases to which it is ap-

plicable, it is not erroneous, it is a form of expression from which a jury might well understand that the employer was bound in every case to furnish safe machinery to the employé. The instruction, however, does not state the law applicable to the facts of the present case correctly, and hence it is misleading and erroneous. The car which occasioned the injury having been received by the plaintiff in error, in the regular course of business, from another company, for transportation over its lines, the receiving company owed to its employés the duty of making proper inspection, and giving notice of its defects, if any were found. Railroad Co. v. McMullen, 117 Ind. 439, 20 N. E. 287. If the car came to it with defects visible, or discoverable by ordinary inspection, its duty was either to return the car to the company from which it came, or to repair it sufficiently to make it reasonably safe. The inspection which the company is required to make of a foreign car tendered to it by another company for transportation over its lines is not merely a formal one, but it should be made with reasonable diligence, so that its employés will not be exposed to perils which reasonable care would have guarded against. The company receiving a foreign car can be held responsible, by an employé who sustains an injury from its defects, only for failure to furnish a competent inspector, or for failure of the inspector to exercise due care in making the inspection. It is not, however, to be held responsible for hidden defects, which could not be discovered by such an inspection as the exigencies of traffic will permit. Railway Co. v. Fry, 131 Ind. 319, 28 N. E. 989. The duty of the plaintiff in error, therefore, is not that of furnishing proper machinery and instrumentalities for service, and seeing that the same are kept in safe repair, but its duty is one of inspection; and this duty is performed by the employment of sufficient competent and suitable inspectors, who are to act under proper instructions, rules, and superintendence. If it has furnished such inspectors, and if a proper inspection is made, and due notice of defects have been given to the employé, its measure of duty is satisfied. It is held by courts of high authority that it has performed its whole duty in respect to foreign cars when it has furnished sufficient competent and suitable inspectors, acting under proper instructions, rules, and superintendence, and that such inspectors must be deemed fellow servants engaged in a common employment with brakemen and switchmen. Mackin v. Railroad Co., 135 Mass. 201; Keith v. Railroad Co., 140 Mass. 175, 3 N. E. 28. The true rule, however, is stated in the case of Railroad Co. v. Herbert, 116 U. S. 642, 652, 6 Sup. Ct. 590. It is there said:

"If no one was appointed by the company to look after the condition of the cars, and to see that the machinery and appliances used to move and to stop them were kept in good repair and working order, its liability for the injuries would not be the subject of contention. Its negligence in that case would have been, in the highest degree, culpable. If, however, one was appointed by it, charged with that duty, and the injuries resulted from his negligence in its performance, the company is liable. He was, so far as that duty is concerned, the representative of the company. His negligence was its negligence, and imposed a liability upon it."

At the proper time the plaintiff in error asked the court to instruct the jury as follows:

"The plaintiff was employed by the defendant as a switchman in its railroad yards at Streator, and as such it became and was his duty to couple and uncouple the cars handled by the defendant there. By accepting such employment, he assumed its natural and usual risks and hazards, and, if you believe from the evidence in this case that the injury which the plaintiff received was due to the natural and usual hazards and risks of his employment there as a switchman, then the plaintiff cannot recover in this action, and your verdict should be for the defendant."

The court refused to give this instruction, and an exception was duly reserved, and this ruling has been properly assigned here. The evidence showed that the defendant in error was employed as a switchman in the yards of the plaintiff in error at Streator at and prior to his injury, and that it was his duty to couple and uncouple the cars handled by it in such yard. According to the usual course of business, well known to the defendant in error, and notorious, the plaintiff in error was in the habit of receiving many foreign cars daily for transportation over its lines. He well knew that it was the practice of the railroad company to cause all such cars to be inspected when offered, and if they were found to be defective they were returned to the connecting carrier from which they came. The plaintiff in error was therefore entitled to have the court instruct the jury in regard to the rights and responsibilities of the parties, if they believed that the injury was due to the natural and usual hazards and risks of the service. The cases in support of the doctrine that an employé assumes all the natural and usual risks and hazards of the service which he undertakes are so numerous, and the principle is so elementary, that we will not incumber the opinion with citations.

Some other questions have been presented by the assignment of errors, and argued by counsel; but as the case will have to be reversed for the errors above pointed out, and as the alleged errors may not occur upon another trial, we do not deem it necessary to express any opinion upon them. The judgment of the court below is reversed, at the costs of the defendant in error, and the case remanded to the court below, with instructions to grant a new trial.