GUSTAF OLSEN vs. DAVID H. ANDREWS.

Suffolk.  January 20, 21, 1897. — May 18, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Due Care — Negligence — Assumption of Risk — Fellow Servant — Evidence of Competency.*

A., who was employed in repairing a high bridge crossing a river and having railroad tracks laid upon it, was obliged, while going back and forth between his work and his boarding place, to walk upon one of the tracks, which was given up by the railroad corporation to his employer for his use in repairing the bridge, the other track being used for trains.  A. entered upon the bridge, in returning from his dinner to his work, and, as a freight train was passing by his side on the other track, a derrick car in use about the work came up behind him, moving at the rate of twelve miles an hour, and he started to run as fast as he could toward the end of the bridge, where his work was, and nearly reached it when the car overtook him and injured him.  The only other thing that he could have done was to get down between the ties and climb upon the timbers composing the frame of the bridge and hold on there while the car passed him. *Held*, in an action by him against his employer for his injury, that there was evidence that he was in the exercise of due care.

It is not evidence of negligence on the part of an employer, engaged in repairing a bridge over a river, in failing to provide for his employee some mode of going back and forth between his work and his boarding house other than by walking on the railroad track laid upon the bridge, nor in failing to furnish a different kind of derrick car from that in use about the work when the latter entered the service, and which injures him, if, so far as appears, the car is suitable for the use for which it is intended; but the use of the car and the necessity of passing over the bridge create obvious risks connected with the business in which he is engaged.

A servant, who, in going back and forth between his work and his boarding house, is obliged to walk on a railroad track laid upon a bridge over a river which he is employed in repairing, and is injured while returning to his work at noon by being struck by a derrick car in use about the work, is in his master's service, and a fellow servant with the engineer of the car at the time of the accident.

In an action for personal injuries occasioned to the plaintiff while employed by the defendant, — who was engaged in repairing a bridge crossing a river and having railroad tracks laid upon it, — by being run over by a derrick car in use about the work, the foreman testified that when the men were being selected by A., who was the defendant's agent, to work upon this bridge, the witness objected to the engineer, and said that he did not like the way in which he handled the derrick car; that upon several previous occasions, when they were working in another place, the witness told A. that he did not like the way the engineer was working the derrick car, that he was handling it nervously, and that the witness was afraid of it, that "he was nervous and foolish, and might run over somebody," that "he was liable to run over some man if he did not take him away," and described in his testimony what nervousness he observed

on the part of the engineer when running the car; and that A. replied, "It don't take much of a man to run a derrick car; anybody can run it." *Held,* that there was evidence of negligence on the part of the defendant in retaining in his service an incompetent servant.

Although specific acts of negligence are not admissible to show the incompetency of a servant, when the conduct of a fellow servant of the plaintiff tending to show his qualifications or his mental or physical fitness or unfitness for his work is properly before the jury upon one of the issues of the case, they may consider it on the question of his competency.

Tort, for personal injuries occasioned to the plaintiff, while employed by the defendant in repairing a bridge, by being run over by a derrick car. Trial in the Superior Court, before *Blodgett,* J., who directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts sufficiently appear in the opinion.

*P. M. Keating,* for the plaintiff.

*A. Hemenway,* (*G. C. Dickson* with him,) for the defendant.

Knowlton, J.   At the close of the testimony the presiding justice ruled that there was no evidence to warrant a verdict for the plaintiff, and directed a verdict for the defendant.

There was evidence that the plaintiff was in the exercise of due care. According to the testimony all the men employed by the defendant boarded on the west side of the Hudson River, while their work was upon a bridge crossing the river, and a part of it at the east end of the bridge. The only way from the plaintiff's work to his boarding place was over the bridge on the northerly or west bound track, which was given up by the railroad company to the defendant for his use while repairing the bridge. It was against the rule to ride on the derrick car, and he was obliged to walk. He had been to his dinner on the west side of the river, and was returning over the bridge when the derrick car came up behind him and ran over him. The engineer who was running the derrick car had been working with his car on or about the bridge at least five days, and may be presumed to have known that the men were accustomed to walk back and forth across the bridge at the dinner hour. The bridge was sixty or seventy feet above the water. The southerly or east bound track was used at the time by the railroad company for its trains going in both directions. When the plaintiff entered upon the bridge at the west end there were four men crossing over before

him. A freight train came behind him on the southerly track and was passing by his side when the derrick car came up, so that it was impossible to step across to that track. When he saw the derrick car coming it was moving at the rate of about twelve miles an hour, and he started to run as fast as he could toward the end of the bridge, and got nearly to the end of it when the car overtook him. The only other thing that he could have done was to get down between the ties and climb upon the timbers which constituted the frame of the bridge, and hold on there while the car passed above him. To do this quickly would have been difficult and not free from danger. He well might suppose that the engineer running the car would check its speed until he could reach the end of the bridge, instead of running over him. He had every reason to believe that the engineer, before entering upon the bridge, had looked ahead to see whether pedestrians were upon the track. If the engineer had looked seasonably he could not have failed to see the plaintiff. It was not to be expected that he would deliberately run over a fellow workman, or that he would even expect one to get down under the track and cling to the timbers to save one or two minutes for those who were using the car. If the plaintiff thought himself in great danger, and acted under excitement, he may well be excused if he failed to adopt the best course.

We are of opinion that there was no evidence of negligence on the part of the defendant in failing to provide for the plaintiff some other mode of getting back and forth between his work and his boarding house, nor in failing to furnish a different kind of derrick car. The defendant owned and was using the car when the plaintiff entered his service. So far as appears, it was suitable for the use for which it was intended. The use of it and the necessity of passing over the bridge created obvious risks connected with the business in which the plaintiff was engaged.

The plaintiff contends that he was not in the defendant's service, and that he was not a fellow servant with the engineer at the time when the accident happened. He was upon the bridge which his employer was repairing and on which he was engaged to work. Although he was not working, but only

returning to his work at the end of the bridge, we think that his use of the bridge was so far incidental to his service that in reference to risks growing out of the use of it by others engaged in the master's service he should be deemed to be a servant. We are of opinion that this contention cannot be maintained.

The plaintiff contends that, if they were fellow servants, there was evidence that the defendant was negligent in hiring the engineer, or in retaining him in his service. The evidence principally relied on to prove this came from one Sanderson, the foreman. It appears that one Nash represented the defendant in hiring and discharging the men, and, if he was guilty of negligence in this department of the business, his negligence is to be imputed to the defendant. *Gilman* v. *Eastern Railroad*, 13 Allen, 433. Sanderson testified that, when the men were being selected by Nash to work upon this bridge, he objected to the engineer, and said that he did not like the way in which he handled the derrick car. He also testified that upon several previous occasions, when they were working in Providence, he told Nash he did not like the way he was working the derrick car, that he was handling it nervously and that the witness was afraid of it, that " he was nervous, and foolish, and might run over somebody," and that " he was liable to run over some man if he did not take him away." In answer to the question what nervousness he observed on the part of the engineer when running the car, he replied that " he would shut right up and snap his eyes when any responsibility was required, and go ahead. Open his throttle and let her go quick, full speed." He testified that, among other things, Nash said in reply, " It don't take much of a man to run a derrick car ; anybody can run it." This testimony, if believed, would well warrant the jury in finding that Nash had his attention directed to the question whether the engineer was a suitable man for his place, and that he did not think his qualifications of a high order. If there was evidence to warrant a finding that he was in fact incompetent, this part of the plaintiff's case would entitle him to go to the jury. Sanderson's testimony of what he observed, although it is indefinite and not very satisfactory, has some tendency to show that the engineer in his general conduct was not a man of cool

head and sound judgment, well qualified to meet an emergency in the management of a locomotive engine. Nash's answer, quoted above, made within the scope of his agency, might be considered for what it was worth.

We are of opinion that upon this question the conduct of the engineer just before the accident might be considered by the jury. It has been held by this court that specific acts of negligence cannot be introduced to show the incompetency of a servant. *Hatt* v. *Nay*, 144 Mass. 186. *Kennedy* v. *Spring*, 160 Mass. 203, 205. *Connors* v. *Morton*, 160 Mass. 333. *Driscoll* v. *Fall River*, 163 Mass. 105. The reason of this rule is that such evidence might present a multiplicity of issues that could not properly be tried together. In other jurisdictions the authorities on this question are conflicting. See *Baulec* v. *New York & Harlem Railroad*, 59 N. Y. 356; *Pittsburgh, Fort Wayne, & Chicago Railway* v. *Ruby*, 38 Ind. 294; *Frazier* v. *Pennsylvania Railroad*, 38 Penn. St. 104. But it has never been held in this Commonwealth, when conduct of a fellow servant tending to show his qualifications, or his mental or physical fitness or unfitness for his work, is properly before a jury upon one of the issues of the case, that they are forbidden to consider it on the question of his competency. In *Peaslee* v. *Fitchburg Railroad*, 152 Mass. 155, it seems to have been assumed that such evidence is competent upon this issue. Of course it is not competent on the question whether his employer was negligent in hiring him or retaining him in his service without independent proof that the employer ought to have discovered his incompetency. *Keith* v. *New Haven & Northampton Co.* 140 Mass. 175. While the evidence relied on to show negligence in retaining the servant seems to us slight and of little significance, we are of opinion that it presented a question for the jury. The evidence offered by the plaintiff to show how the engineer ran the car while on this work, before the accident, was rightly excluded. It referred to special acts of alleged negligence, and so far as appears the defendant had no knowledge of them.

*Exceptions sustained.*