ELIZABETH MILLER, EXECUTRIX OF WILLIAM MILLER, DECEASED, PLAINTIFF IN ERROR, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT IN ERROR.

Argued March 5, 1903—Decided June 15, 1903.

1. Where a flagman of a stalled railway train, whose duty it is to signal an approaching train, fails to perform that duty, the railway company is not responsible to a fellow-servant of the flagman for such neglect.

2. A flagman of one train and the engineer of another train of the same company are engaged in a common employment, and are fellow-servants within the rule exempting the master from liability.

---

On error to the Supreme Court.

For the plaintiff in error, *Irwin W. Schultz.*

For the defendant in error, *George M. Shipman.*

The opinion of the court was delivered by

SWAYZE, J. This is an action by the executrix of William Miller to recover damages for his death. The decedent was the engineer of a passenger train upon the Central railroad, and was injured by a collision with the rear end of a coal train. The collision occurred about six o'clock in the morning, December 3d, 1900, near Stocker's crossing, about three miles from Phillipsburg. The coal train had been running very slowly, apparently on account of a wet and slippery rail. It had taken over an hour to travel the three miles between Phillipsburg and the point of collision. There was testimony to show that it was going at the rate of about two miles an hour when the collision took place. Just before the collision the engineer gave the signal for the flagman, who was riding on the pusher engine of the coal train, to go back for the purpose of flagging the approaching train, and this signal was repeated. The flagman did not respond promptly to the signal, and the conductor of the coal train found him, after the second signal had been given, in the tank of the engine, and, in the witness' own language, "chased him back." He had gone some seven or eight rail lengths—the estimates of distance vary from one hundred to one hundred and sixty feet—when Miller's train came in sight. It was then too late to avoid the collision.

It appeared that the train dispatcher of the company at Jersey City had been anxious about the coal train, and had inquired frequently, just prior to the accident, of the telegraph operator at Bloomsbury (where the coal train was to run on a siding) if the coal train had been seen.

The trial judge ordered a nonsuit, holding that the proximate cause of the accident was the negligence of the flagman to signal Miller's train, and that the flagman was a fellow-servant.

We agree with the trial judge.   It can make no difference in the case to what cause the stalling of the coal train is attributable.   Such stalling was an ordinary occurrence.   It was to provide against such an accident as happened in this case that the flagman was required to go back to signal an approaching train.

The counsel for the plaintiff in error argued that the company was negligent—*first,* because it failed to have a sufficient number of officers at its managing headquarters in Jersey City to conduct its business; *second,* because it failed to notify the decedent, when he left Phillipsburg, that the coal train had not reached Bloomsbury—twelve miles distant—so that he might run around the coal train or look out for it, and *third,* because the flagman was an ordinary brakeman only.

As to the first allegation of negligence, it is enough to say that there is no evidence to show that the company did not have the ordinary force necessary for the conduct of its business.   The train dispatcher at Jersey City is shown to have been alert and to have made frequent inquiries for the location of the coal train.

As to the second allegation of negligence, we think it would be impossible to sustain a verdict based upon the idea that reasonable care on the part of the railroad company required it to notify the decedent before he left Phillipsburg that the coal train had not yet reached Bloomsbury.   The system of warning signals which had been adopted by the railroad company seems, from the evidence, to have been known, and must necessarily have been known, to the decedent.   That system made no provision for signals at the early hour in the morning at which this accident happened, between Phillipsburg and the first telegraph station east, at Bloomsbury, other than the ordinary system of warning by sending back a flagman from the train in advance a sufficient distance to warn the engineer of the approaching train.   It was argued that this flagman was not bound to go back if his own train was moving, but the evidence shows clearly that it not only was his duty to go back, but that he disregarded the repeated signal for that purpose from the engineer, and finally was "chased back" by

the conductor.  The evidence leaves no room for doubt that if he had performed his plain duty the accident would not. have happened.

While it is the duty of the railroad company to exercise reasonable care in providing a system of signals, the duty to carry out the system by giving the signals is the duty of the employe, incident to his employment, and for the failure of the employe to perform that duty the employer cannot be held responsible by another employe engaged in the common employment.

The weight of authority in other jurisdictions holds that the employes of a railroad company on different trains are engaged in a common employment.  *Northern Pacific Railroad Co.* v. *Charless,* 162 *U. S.* .359; *Oakes* v. *Mase,* 165 *Id.* 363; *Martin* v. *Atcheson, Topeka and Santa Fe Railroad Co.,* 166 *Id.* 399; *Northern Pacific Railroad Co.* v. *Poirier,* 167 *Id.* 48; *Peaslee* v. *Fitchburg Railroad Co.,* 152 *Mass.* 155; *Healey* v. *New York, New Haven and Hartford Railroad Co.,* 20 *R. I.* 136. ·

We think this is a correct application of the general rule exempting the master from liability for the negligence of a fellow-servant.·

It is urged that the railroad company was negligent in employing an incompetent flagman, or in imposing the duties of a flagman upon a rear brakeman.  The answer is that there is no evidence in this case that the flagman was incompetent, except this single act of negligence, and there is nothing to show that it was improper to entrust the rear brakeman with the duty of the flagman.  On the contrary, the evidence shows that that was the ordinary course of business.  The duty of a flagman required fidelity only, and not special skill.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM.   13.

*For reversal*—None.