# WILLIE HURLEY v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

## May 19, 1916.

## Nos. 19,688—(98).

**Safety Appliance Act — automatic couplers — car, not the train, the unit.**

1. The test of the application of the Safety Appliance Act of March 2, 1893 (27 St. 531, c. 196), as amended by the act of March 2, 1903 (32 St. 943, c. 976), requiring the use of automatic couplers on cars, to the use of a car not equipped with such couplers, is the use of such car on a railroad which is a highway of interstate commerce and not its actual. use at the time in moving interstate traffic, and the car and not the train is the unit in determining the application of the act, and a switching operation moving interstate cars may be within its application.

**Federal Employer's Liability Act — what constitutes liability.**

2. When liability is based upon the Federal Employer's Liability Act of April 22, 1908 (35 St. 65, c. 149), it must be shown that the employer is a common carrier by railroad engaged in interstate commerce and that the employee is employed by the carrier in such commerce at the time of his injury.

**Safety Appliance Act — application to work of switching crew.**

3. The Safety Appliance Act applies where a switching crew is making up cars in a railroad yard for immediate transportation out of the state, the tracks of the yard being used to make up and transfer interstate cars, and in general for interstate transportation, the couplers on the interstate cars moved at the time in the process of transfer being defective.

[1]Reported in 157 N. W. 1005.

---

Note.—On the constitutionality, application and effect of the Federal Employer's Liability Act see notes in 47 L.R.A.(N.S.) 38, L.R.A. 1915C, 47.

As to the duty and liability of railroads under Federal and state railway safety appliance acts see notes in 20 L.R.A.(N.S.) 473; 41 L.R.A.(N.S.) 49.

As to whether a terminal railway company in moving interstate traffic is within Federal safety appliance act see note in 22 L.R.A.(N.S.) 582.

**Interstate commerce — finding supported by evidence.**

4. Where the evidence shows that the plaintiff's intestate, a switch-man, was employed in switching cars in one of the defendant's yards, putting them into strings of cars for transportation into another state, the only transportation by railroad out of the state being such as was given by the switching crew, and the cars being destined for immediate interstate transportation, a finding that he was employed in interstate commerce is justified.

**Evidence.**

5. The evidence justified a finding that certain couplers were defective in that the knuckles would not open except by hand.

**Negligence of fellow servant.**

6. The evidence justified a finding that a coservant of the plaintiff's intestate who caused cars to be kicked against a string of cars about which he was working, knowing him to be about, and contrary to the custom, was negligent.

**Evidence of cause of death — statute applicable.**

7. The jury, without indulging in conjecture, could find from the evidence the cause of the death of plaintiff's intestate; and they could find that it came from defective couplers, in which event the Safety Appliance Act applied, or from the negligence of a fellow servant, in which event the Federal Employer's Liability Act applied.

**Error to dismiss case.**

8. The court erred in dismissing the case at the close of the plaintiff's testimony.

Action in the district court for Ramsey county by the administratrix of the estate of Uel L. Hurley, deceased, to recover $30,000 for the death of her interstate while in the employ of defendant. The case was tried before Hanft, J., who when plaintiff rested granted defendant's motion to dismiss the action. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Samuel A. Anderson* and *A. F. Storey,* for appellant.

*Charles C. LeForgee, Blewett Lee* and *Butler, Michell & Hoke,* for respondent.

Dibell, C.

Action to recover damages for the death of the plaintiff's intestate. At the close of the testimony the action was dismissed on the motion of

the defendant. The plaintiff appeals from the order denying his motion for a new trial.

The plaintiff grounds his action upon the Safety Appliance Act and the Federal Employer's Liability Act. He claims that certain automatic couplers were defective, and that a coservant of the deceased was negligent in running cars against those about which the deceased was working. The deceased was killed in a railroad yard of the defendant at Paducah, Kentucky.

1. Section 1 of the Safety Appliance Act of March 2, 1893 (27 St. 531, c. 196) provides that "it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic * * * that has not a sufficient number of cars in it so equipped with power or train brakes," etc. Section 2 provides that "it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The act of March 2, 1903 (32 St. 943, c. 976), provides that the former act, as amended, "shall apply in all cases, whether or not the couplers brought together are of the same kind, make, or type; and the provisions and requirements hereof and of said acts relating to train brakes, automatic couplers, grab irons, and the height of draw bars shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce * * * and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith * * *." There is a provision, not material here, requiring a certain percentage of the cars to be equipped with air brakes.

In Southern Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. ed. 72, an action to recover penalties for using cars not equipped with automatic couplers, it was held that the test of the application of the act is the use of the cars on a railroad which is a highway of interstate commerce and not their use in moving interstate traffic. There a penalty was exacted of the defendant carrier for using five cars with defective

couplers, two of the cars at the time moving interstate traffic and the other three moving intrastate traffic. In considering the amendment the court said "the true test of its application is the use of the vehicle on a railroad which is a highway of interstate commerce, and not its use in moving interstate traffic." And again it said that "it must be held that the original act as enlarged by the amendatory one is intended to embrace all locomotives, cars and similar vehicles used on any railroad which is a highway of interstate commerce."

In United States v. Erie R. Co. 237 U. S. 402, 35 Sup. Ct. 621, 59 L. ed. 1019, there was involved the use of defective couplers and the operation of certain transfer trains in which cars of the requisite percentage were not controlled by air-brakes. The company had several yards some miles apart and strings of cars were run between one and the other as convenience required without being made into through trains. The court said: "It will be perceived that the air-brake provision deals with running a train, while the other requirements relate to hauling or using a car. In one a train is the unit and in the other a car. As the context shows, a train in the sense intended consists of an engine and cars which have been assembled and coupled together for a run or trip along the road. When a train is thus made up and is proceeding on its journey, it is within the operation of the air-brake provision. But it is otherwise with the various movements in railroad yards, whereby cars are assembled and coupled into outgoing trains, and whereby incoming trains which have completed their run are broken up. These are not train movements but mere switching operations, and so are not within the air-brake provision. The other provisions, calling for automatic couplers and grabirons, are of broader application and embrace switching operations as well as train movements, for both involve a hauling or using of cars. * * * We are persuaded that the transfer trains * * * came within the purview of the air-brake provision." These cases indicate the scope of the application of the act.

2. The Federal Employer's Liability Act of April 22, 1908 (35 St. 65, c. 149), provides that "every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such em-

ployee, to his or her personal representative * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *." When this statute is invoked as the basis of liability, it must be shown that the employer is a common carrier by railroad engaged in interstate commerce and that the injury to the employee came while he was employed by the carrier in such commerce; and of course negligence must be proved. See Roberts, Injuries to Interstate Employees, § 26, et seq. and cases cited.

3. The plaintiff's intestate was a switching foreman in one of the defendant's yards at Paducah, Kentucky, the yard being known as the "Boat Yard." This yard extends in a general north and south direction. The Ohio river is at its north end. From the north end cars pass by a transfer boat into Illinois. In this yard are 10 tracks, numbered progressively from 1 to 10 commencing at the east. At the time of the decedent's death a number of cars stood on track 10, the westerly one. It was the purpose of a switching crew to put in on track 10 two cars which were on track 6. They were the two northerly cars of a string of four. The switch engine went in from the south, coupled to the cars, then moved south from track 6 on to the lead, then went north onto track 10 and kicked the two cars against the string of standing cars. The deceased was at the time near the north end of this string of cars. The two cars brought from track 6 were loaded merchandise cars designed for points in Illinois. The object of the particular operation was to get the two loaded cars in on 10, and finally to the boat transfer. The boat yard connected at the south with a main line going west to Cairo, Illinois. What the connection was across the river in Illinois does not affirmatively appear; but it does appear that the boat transfer was used to transport the defendant's freight and passenger cars across the river into Illnois and we infer that there was a line to the north. All of the yard tracks led to the boat transfer, and cars went from any one of them to the north side of the river and into another state. These tracks carried interstate traffic and were highways of interstate commerce within the meaning of Southern Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. ed. 72, and United States v. Erie R. Co. 237 U. S. 402, 35 Sup. Ct. 621, 59 L. ed. 1019, discussed supra. Interstate cars

constantly passed over them. The Safety Appliance Act applied to the interstate cars in use on them.

4. Whether the plaintiff's intestate was employed by the defendant in interstate commerce at the time he was killed involves other considerations. Among the mass of cases, some like and some dissimilar, none at all controlling on its facts is found. "Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof." New York Central & H. R. R. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. ed. 1298. The operation which resulted in the death of the decedent had as its object the transfer of the two merchandise cars, and other cars, across the river to the north. The car which ran over the deceased was an interstate car, and on the same night went with other cars from track 10 over the river. The switch crews were the only ones, so far as the evidence discloses, who had anything to do with the movement of the cars in their transportation to the boat transfer. The cars were put together into strings of a few each, the air was coupled, and the crews took them down to the boat transfer, and the cars went across to the Illinois side. Just how the boat transfer was conducted does not appear. The only rail movement given the cars on the Kentucky side was given by the switching crews, and unless this movement was interstate the cars got from Kentucky to Illinois without an interstate rail movement. For the purposes of this appeal we need go no further than a holding that it was a question for the jury whether the plaintiff's intestate was employed by the defendant in interstate commerce when he met his death, and since the evidence on a new trial may be different, and may make the question entirely clear one way or the other, we go no further. The following cases in our view are of value upon the consideration of the interstate character of the operation, either as a matter of law or as a question for the jury: Delk v. St. Louis & S. F. R. Co. 220 U. S. 580, 31 Sup. Ct. 617, 55 L. ed. 590; St. Louis v. Delaware, 229 U. S. 146, 33 Sup. Ct. 651, 57 L. ed. 1129, Ann. Cas. 1914C, 156; Pedersen v. Delaware, 229 U. S. 156, 33 Sup. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153; New York Central & H. R. R. Co. v.

Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. ed. 1298; Pennsylvania Co. v. Donat, 239 U. S. 50, 36 Sup. Ct. 4, 60 L. ed. 139; Great Northern Ry. Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. ed. 322; Seaboard Air Line Ry. v. Koennecke, 239 U. S. 352, 36 Sup. Ct. 126, 60 L. ed. 324; Chicago, R. I. & P. Ry. Co. v. Wright, 239 U. S. 548, 36 Sup. Ct. 185, 60 L. ed. 431; Pecos & N. T. Ry. Co. v. Rosenbloom, 240 U. S. 439, 36 Sup. Ct. 390, 60 L. ed. 730. The case of Illinois Central R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. ed. 1051, Ann. Cas. 1914C, 163, cited by the defendant, and often cited against the claim of the interstate character of an operation, involved a purely intrastate operation wholly separate and disconnected from an interstate movement.

5. The two cars at the north were not coupled to the others. They did not couple upon impact. The couplers were not of the same make. Upon an examination made immediately after the deceased was killed, it was found that the knuckles would not open with the use of the pin-lifter lever, and that to open them one must go between the cars and use his hands. The proof that the couplers were defective was sufficient. A coupler which will not couple by impact, unless the knuckles have been opened by hand, is not such as is contemplated by the act. Burho v. Minneapolis & St. Louis R. Co. 121 Minn. 326, 141 N. W. 300.

6. When the switching crew came in from the south with the two cars from track 6, the deceased was about the cars toward the north of 10. The switchman, who rode the engine and controlled its movements by signal, had been told that he would be there in the discharge of his duties working about the cars. He cut off the two merchandise cars and caused them to be kicked against the standing cars. It was not customary to do this when an employee was working about them. That a jury could find negligence from these facts is without question. See Moores v. Northern Pacific Ry. Co. 108 Minn. 100, 121 N. W. 392.

7. The plaintiff must prove that the death of his intestate came from some act for the results of which the defendant is liable. It is not for the defendant to show that it came from some act for which it is not responsible. The proof need not be direct nor positive. It must leave the result more than conjectural. "If the circumstantial evidence was 'something more than consistent' with plaintiff's theory, if it furnished

a reasonable basis for the inference by the jury of the ultimate fact that the alleged negligence was the cause of the injury complained of, it is sufficient proof of the causal connection to sustain a verdict." Mitton v. Cargill Ele. Co. 124 Minn. 65, 144 N. W. 434. "To sustain a finding that a defective appliance caused an accident, it is necessary that some circumstances be shown which establish, not only that the accident may have happened from the cause alleged, but which indicate, to some extent at least, that such was the cause." Bruckman v. Chicago, St. P. M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263.

When the two merchandise cars were kicked against the standing cars on track 10, the deceased was heard to scream. He was found between the two rails, lying on his face, and partly under the north end of the car southerly of the two northerly ones. The defective couplers were on these two cars. He was crushed in and about the hip and above it, and death resulted in a few minutes. His lighted lantern was standing on the westerly side of the track as if he had put it there. He had a pencil in his hand. In his line of work he took the numbers of the cars, standing or passing on the west side of the track in doing so. It was customary for the switching foreman, working as the deceased was, to examine the couplers, fix them so that they would automatically couple, and connect the air hose. It is the theory of the plaintiff that the deceased was between the two cars, in the discharge of his duties, either opening the knuckles, or tending to the air line, and was caught between the two uncoupled cars when those from the south were kicked in. A jury, proceeding by fair inference and without indulging in conjecture, might have so found. Such a finding would not be merely speculative within our decisions: Rogers v. Minneapolis & St. L. Ry. Co. 99 Minn. 34, 108 N. W. 868; Moores v. Northern Pacific Ry. Co. 108 Minn. 100, 121 N. W. 392; Bruckman v. Chicago, St. P. M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263; La Pray v. Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313; Demerce v. Minneapolis, St. P. & S. S. M. Ry. Co. 122 Minn. 171, 142 N. W. 145; Crandall v. Chicago Great Western R. Co. 127 Minn. 498, 150 N. W. 165; Diebel v. Wolpert, Davis & Co. 129 Minn. 77, 151 N. W. 541; Fitzgerald v. Armour & Co. 129 Minn. 81, 151 N. W. 539; Kludzinski v. Great Northern Ry. Co. 130 Minn. 222, 153 N. W. 529.

The evidence was such as to justify a finding that the death of the decedent came from defective couplers, in which case the Safety Appliance Act applies; or that it came from the negligence of the decedent's coservants in the switching operation, in which event the Federal Employer's Liability Act applies.

8. In reviewing the case we have at times assumed disputed facts to be as the plaintiff claims them, for he has the right to have them viewed upon his appeal as a jury might find them. It should not be understood that the defendant concedes them to be as we have sometimes recited them or that a jury would find them so. We are of the opinion that the case was for the jury and that it should not have been dismissed.

Order reversed.