### COLORADO & S. RY. CO. v. ROWE.
### (No. 1688.)

(Court of Civil Appeals of Texas. Amarillo. June 30, 1920. On Motion for Rehearing and for Additional Findings, Oct. 27, 1920.)

1. **Master and servant** ☞285(7), 286(13)—Negligence as to freight brakeman held question for jury.

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of a freight brakeman, run over by the train from which he fell when a car ahead of him dumped coal on the track, causing the air brakes to set suddenly, evidence *held* sufficient to take the case to the jury on the theory that the railroad was negligent in failing to provide safe fastening for the dump door on the car, and that such negligence was the proximate cause of the accident.

2. **Negligence** ☞134(2), 136(25)—Proximate cause question of fact, provable by circumstantial evidence.

Proximate cause is ordinarily a question of fact, which may be established by circumstantial evidence.

3. **Master and servant** ☞291(4)—Instructions on negligence in furnishing defective car held warranted.

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for

a brakeman's death by falling under his train when a defective car ahead of him dumped coal on the track, where it was impossible to show his exact position and just how his fall was caused, evidence *held* not such as to render the submission of the issue of negligence in general terms erroneous, and to warrant a special charge excluding from the consideration of the jury the facts as to the uncoupling of the train and the air hose and the bouncing of the coal to strike deceased in his position.

**4. Master and servant ⬤➡106(3), 124(4)—Duty of care applies to railroad accepting cars from another.**

The general duty of the master to furnish only such equipment and appliances as are reasonably safe in the particular use applies to the acceptance for transportation of cars coming to one railroad from another, and is discharged if the accepting railroad exercises ordinary care to inspect the cars, not being liable for latent defects.

**5. Master and servant ⬤➡291(4) — Evidence held not to require submission of special issue of liability for injury to brakeman by foreign car.**

Evidence *held* not to show conclusively that the car which caused the death of defendant railroad's brakeman was a foreign car, though it was called the car of another road, so as to require submission of defendant's special issue of liability for injury by a foreign car.

**6. Master and servant ⬤➡106(4)—Car lent to railroad regarded as its car.**

A car lent by one railroad to another, in respect to the latter's employés, will be regarded as its car.

**7. Master and servant ⬤➡265(9)—Car presumed part of railroad's equipment.**

Where evidence as to the extent of defendant railroad's control of the car which killed its brakeman was within defendant's knowledge, in the absence of showing to the contrary it will be presumed the car was controlled by defendant as part of its equipment.

**8. Appeal and error ⬤➡930(3) — Appellate court may assume decision against appellant on issue whose submission to jury not requested.**

If there was any issue of fact, the Court of Civil Appeals may assume the trial court decided against defendant appellant on the issue, in the absence of request for its submission to the jury.

**9. Trial ⬤➡351(5)—Refusal to submit special issue on accident not error, where covered.**

In an action against a railroad for death of its brakeman, when a car ahead of him dumped coal on the track, *held* that the trial court's failure to submit an issue of accident in the general charge, and its refusal to submit special issue thereon requested by defendant railroad, was not error; the affirmative answer to the issues of negligence and proximate cause involving necessarily a negative of the issue of accident.

**10. Master and servant ⬤➡289(18)—Evidence insufficient to take issue of brakeman's negligence to jury.**

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of a brakeman when a car ahead of him dumped coal on the track, evidence *held* insufficient to require submission to the jury of issue of negligence of brakeman in having stepped on the pin lifter of a car.

**11. Master and servant ⬤➡265(14)—Burden to prove contributory negligence on master.**

The burden of proof was on defendant employer, in suit for death of its servant, on the issue of the servant's negligence; the presumption being against such fact.

**12. Master and servant ⬤➡291(8)—Contributory negligence not sufficiently pleaded to require submission of issue.**

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of a brakeman when a defective car ahead of him dumped coal on the track, his negligence in stepping or falling on the pin lifter between cars *held* not insufficiently pleaded to require submission of his negligence in doing so.

**13. Appeal and error ⬤➡1062(2)—Failure to submit more specifically issues of accident and servant's negligence harmless.**

In an action against a railroad for death of its brakeman when a car ahead of him dumped coal on the track, failure to submit more specifically the issues of accident and contributory negligence *held* harmless to defendant railroad.

**14. Trial ⬤➡234(7)—Instruction on burden of proof not confusing.**

In an action for death of a brakeman when a car ahead of him dumped coal on the track, instruction that the burden of proof on each special issue was on the party having the affirmative, coupled with the refusal of the trial court to give requested instructions informing the jury specifically that the burden was on plaintiff as to certain issues, *held* not confusing.

**15. Master and servant ⬤➡297(1)—Refusal of special issue as to whether door of car was fastened by wire proper.**

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of a brakeman when a defective car ahead of him dumped coal on the track, refusal to submit a special issue as to whether the coal fell as the result of the chain on the dump door breaking, or as the result of the door being tied with bailing wire, *held* proper; plaintiff's right to recover not being dependent on specific finding that the door was fastened by bailing wire.

**On Motion for Rehearing and for Additional Findings.**

**16. Master and servant ⬤➡291(10)—Instruction on burden of proof erroneous.**

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of a brakeman when a defective car

ahead of him dumped coal on the track, instruction on burden of proof *held* erroneous as putting on defendant the burden of showing that the car was in a reasonably safe condition.

**17. Appeal and error ⬅️232(3)—Objection to charge on burden of proof held insufficient to raise point of error.**

In an action against defendant railroad for death of its brakeman when a car ahead of him dumped coal on the track, neither objection to the court's charge on burden of proof nor the proposition thereunder *held* sufficient to raise the point that the charge was erroneous as putting on defendant railroad the burden to prove that the car ahead was in a reasonably safe condition.

**18. Trial ⬅️284 — Objection not made to charge at time waived.**

Under Rev. St. 1911, art. 1971, objection not made to the instruction of the trial court at the time was waived.

**19. Appeal and error ⬅️750(1) — Appellate courts confined to reasons in assignments or germane propositions.**

Appellate courts, in considering assignments of error, are confined to the reasons assigned as contained either in the assignments themselves or in the germane propositions thereunder.

**20. Master and servant ⬅️278(6)—Evidence sufficient to raise issue of accident.**

In an action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for death of a brakeman when a car ahead of him dumped coal on the track, evidence *held* sufficient to raise the issue of accident.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by Ada Rowe against the Colorado & Southern Railway Company and the Ft. Worth & Denver City Railway Company. From judgment for plaintiff against it, the defendant first named appeals. Affirmed.

See, also, 205 S. W. 731.

E. E. Whitted, of Denver, Colo., Thompson, Barwise, Wharton & Hiner, of Ft. Worth, and Turner & Dooley, of Amarillo, for appellant.

Barrett & Childers and Reeder & Reeder, all of Amarillo, for appellee.

BOYCE, J. Appellee, as administratrix, and for the benefit of herself and two minor children, brought this suit against the Colorado & Southern Railway Company and the Ft. Worth & Denver City Railway Company, to recover damages under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) for the death of her husband, Edgar Rowe. The said railway companies were sued as partners, but there was a peremptory instruction for the Ft. Worth & Denver City Railway Company; and, as no question arises in connection with its elimination from the case, we need refer no further to the allegations that attempted to make it liable

with the appellant company. The plaintiff alleged in her petition that on June 15, 1916, the said Edgar Rowe was in the employ of the appellant company as brakeman on a freight train running from Trinidad, Colo., to Texline, Tex.; that while said train was traveling at a rapid rate of speed one of the bottom doors of one of the cars in the train dropped open and dumped a large amount of coal on the track under the cars; that the said Rowe was at the time engaged in his duties on the train on one of the cars near said coal car, and was caused to fall from the train, and was run over and killed; that no one saw the said Rowe at the exact moment, so that plaintiff cannot set out the exact manner in which he was. killed, but alleges that the falling of the coal on the track caused the air hose of the train to uncouple, setting the brakes suddenly and unexpectedly, and so jarred and shook the train that it contributed to and was one of the causes of the said Edgar Rowe's fall; that said coal falling from said car bounced and struck the said Edgar Rowe, which also contributed to his fall; that the cars were jolted by running over said coal on said track, and this fact contributed to cause said Rowe to fall from said car; that a great dust was caused to arise from the coal falling on the track, which blinded and choked the said Rowe, and also contributed to his said fall; "that each and everything herein alleged was the proximate cause of his said fall, and that all, taken together, was the proximate cause of said fall and said killing;" that the door of said car was insecurely fastened, and that it was negligence on the part of the defendant to use said car and transport the same in a train in such condition. Defendant answered by exceptions, general denial, and pleas of assumed risk, and contributory negligence.

It is undisputed that the said Rowe met his death about 10:45 p. m. June 15, 1916, by being run over, as alleged, by a train operated by the appellant, on which he was brakeman. The train was proceeding south between Des Moines and Clayton, N. M., at the time. There was a heavy grade to descend between said places, and it was customary before this grade was reached to turn up what was described as the air retainers on a certain number of cars, the purpose of this being to assist in the operation of the air brakes and in the control of the train while descending such grade. On this occasion Rowe had been instructed to turn up a certain number of retainers on the cars of the train, and, as appears from our further statement, had evidently set about this task. While the train was proceeding at the rate of about 20 miles per hour all brakes were suddenly and automatically set, and the train stopped within a few car lengths. The train crew on investigation found that one of the doors in the bottom of a coal car, described

as being El Paso & Southwestern coal car No. 7422, had dropped down and dumped about four tons of coal across the east rail of the track. Rowe's dead body was found under the train near where the coal had been dumped. He was badly mutilated and his face was black with coal dust. His lantern was found burning, setting upright on the coal in the southwestern corner of a coal car described as an Erie car, being the car in the train just behind said El Paso & Southwestern car which dumped the coal. The air retainer on this Erie car was either on the side or end of the car near the southwest corner, there being some conflict as to its exact location. This retainer had been turned up. There is some conflict in the evidence as to whether one could conveniently and safely turn this retainer up from the top of the loaded car. There was a platform about one foot wide in front of the car, and one could stand on this and reach the retainer from it. The air retainer on the El Paso & Southwestern car had not been turned up, but the retainers on several cars behind the Erie car had been turned up. The air hose between the Erie and El Paso & Southwestern cars was uncoupled, and it was the uncoupling of this air hose that set the brakes automatically. The coupling proper between the two cars was properly engaged. The El Paso & Southwestern car was provided with doors in the bottom of the car so that its contents could be dumped. This dumping process was controlled by a shaft, operated by a crank, from which shaft ⅝-inch chains extended to the doors. When these chains were wound up by the shaft they closed the doors, and when the chains were unwound the doors dropped down. There is evidence sufficient to support the conclusion that the chains to the northeast and northwest doors of this car were hanging loose from the shaft, unwound and disconnected from the doors; that the northwest door was fastened up by a baling wire, and a broken baling wire was found on the northeast door, the one that had dumped. The evidence also shows that it would not be a proper or secure manner of fastening such door to tie it up with a baling wire. The train crew gave it as their opinion that the train had been uncoupled between the Erie and the El Paso & Southwestern car and had recoupled by impact, and that the uncoupling of the air hose was the result of the uncoupling of the train.

Considerable testimony was offered as to the possibility of the air hose becoming uncoupled without uncoupling of the train. It was the general opinion of the train crew that this would not occur. It was shown that the air hose hung down at the coupling, and that it could be uncoupled by raising the hose up at the coupling or that it could be pulled apart. It is the theory of these witnesses that the sand board between the brakes, which is only from 7 to 10 inches above the roadbed, would so level off the coal that was dumped that it could not reach the coupling of the hose so as to affect it. We are not prepared to say, however, that the evidence excludes the probability of the air hose being uncoupled under the circumstances without the uncoupling of the train itself. It occurs to us that the effect of the wheels of the car several feet in front of the air hose, running over an obstruction on the track, would certainly have a tendency to whip or throw up the air hose hanging down near the end of the car, and that the train might be uncoupled in this way. The evidence shows that the train could be uncoupled by raising the coupler on one of the cars about 9 inches, as this would lift one coupler out of engagement with the other, and this, of course, could be the result of the wheels nearest the coupler running over something and being raised to a sufficient height to have this effect. However, the evidence shows that if the cars were uncoupled in this way, the coupling pin would be left in place, and it would be impossible for the cars to couple by impact. So this seems to exclude the conclusion that the train was uncoupled in such manner; it not being shown that the coupling pin could be jolted up so as to release the coupling. The coupling pins were controlled by a device known as the pin lifter. The pin lifter on the Erie car was fastened to the front face of the little platform already referred to, and stood out several inches from the platform, and was several inches below the top of it. The device was made to lift the pin and open the coupler. When the coupler is opened by using the pin lifter the pin is left in such position that coupling will be made automatically on impact. There was a point about midway between the coupling and the side of the car at which the pin lifter could be caused to operate by downward pressure and it was the theory of the trainmen that Rowe had fallen or stepped on the pin lifter at such place and in this way uncoupled the cars; that the air hose was thus pulled apart at their coupling, and the train recoupled by impact on the two sections coming together.

The jury found, in response to special issues submitted, that the El Paso & Southwestern coal car was not in a reasonably safe condition for transportation in the train at the time of the injury; that the furnishing of said car by the said defendant in such condition was negligence, and was the proximate cause of the injury and death of Edgar Rowe; that the said Edgar Rowe was not guilty of contributory negligence, and that he did not assume the risk of the injuries sustained. Damages were assessed at the sum of $15,000 and apportioned between the plaintiff and two children.

[1, 2] It is first suggested that there is fundamental error in the refusal of the court to

give appellant's requested peremptory instruction. This suggestion presents practically the same question of law that was decided on a former appeal of this case, in which the case was reversed because the trial court did give such instruction. Rowe v. Colorado & Southern Ry. Co., 205 S. W. 731 (writ of error denied). On the authorities and for the reasons stated in such opinion we hold against this contention. As pointed out in our former opinion, plaintiff's case does not depend on the application of the doctrine of res ipsa loquitur. The facts are sufficient to show negligence in the failure to provide a safe fastening for the dump door on the car and in considering the question of the propriety of giving the defendant a peremptory instruction, the only inquiry would be as to whether the facts are sufficient to warrant a finding that this negligence was the proximate cause of the injury. It is, we think, a reasonable conclusion that the deceased, being enveloped in the cloud of dust which would arise, and subjected to the violent jolting caused by the cars running over the coal, or the sudden application of the emergency brakes, was caused to fall from the train. The question of proximate cause is ordinarily one of fact for the jury. Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, and may be established by circumstantial evidence. C., O. & G. Ry. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Meyrs v. Pittsburg Coal Co., 233 U. S. 184, 34 Sup. Ct. 561, 58 L. Ed. 906; Washington v. M., K. & T. Ry. Co., 90 Tex. 314, 38 S. W. 765; Ft. Worth & Denver City Railway Co. v. Stalcup, 167 S. W. 279; K. C., M. & O. Ry. Co. v. Starr, 194 S. W. 637; Thompson v. Minneapolis & St. L. Ry. Co., 133 Minn. 203, 158 N. W. 42 (affirmed by the Supreme Court of the United States in 242 U. S. 623, 37 Sup. Ct. 244, 61 L. Ed. 533); Hurley v. Illinois Central Railway Co., 133 Minn. 101, 157 N. W. 1005; Lillstrom v. Northern Pacific Railway Co., 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; Roberts Federal Liabilities of Carriers, § 538. In all of the cases referred to no one saw the actual infliction of the injury, but the conclusion that it was the result of a proven act of negligence was, as in this case, established by circumstantial evidence.

[3] The first eight assignments are based on the claim that the submission of the question as to whether the negligence of the defendant in furnishing a defective car was "the proximate cause of the injury and death of Edgar Rowe" is too general. It is asserted under these assignments that the evidence conclusively establishes that the falling of the coal could not have acted in certain ways so as to cause the deceased to fall, though the plaintiff had alleged that such result was caused in such manner. To be more specific, it is claimed that the following facts could not have caused or contributed to cause, the deceased to fall from the train: (1) The coal could not have bounded or been thrown so as to have struck the deceased in his position between the cars or on one of the coal cars; (2) the coal dust could not have arisen so as to have affected him in any way; (3) the falling coal could not have uncoupled the train; (4) the falling coal could not have uncoupled the air hose. Based on these assertions as to the facts, appellant contends that under the submission of the issue in the general terms stated, the jury could have found that the plaintiff was caused to fall by any of these combinations of fact, and the court committed error in submitting the issue in such general language and in refusing to give special instructions requested by appellant, eliminating the consideration of such matters from the jury. We do not agree that the evidence is such as to warrant the exclusion of any of these facts from the consideration of the jury. If the evidence does show that the train could not have uncoupled by merely running over the coal, it does not exclude the possibility that the plaintiff may have been on the platform of the Erie car, or on top of this car or the El Paso & Southwestern car, and was caused by the jolting of the car running over the coal to either step or fall on the pin lifter and thus uncouple the train. But even if the evidence were sufficient to exclude the consideration of any of these facts, we do not think there was any error in the manner of the submission of the issue. It was not requisite that the jury should find the exact manner in which the negligence produced the result, provided the facts were such as to support a reasonable conclusion that there was a causal connection between the negligence and the injury. Under the facts it could not be determined in what exact position the deceased was and just how he was caused to fall. If this was required there could be no recovery in the case, because these minute details are impossible of ascertainment. The cases cited by appellant are not in point. They are all cases where more than one act of negligence was alleged, and some of these were not sufficiently established to make an issue thereon, and it was held that the court should have excluded the consideration of such alleged acts of negligence from the jury. The facts referred to by appellant in these assignments are only evidentiary and the court is not required to comment on the evidence. If the facts were wholly insufficient to support the plaintiff's position as to the ultimate issue, of course the issue itself should have been excluded by the charge of the court from the consideration of the jury, but such is not the case before us.

[4-8] The ninth, tenth, eleventh, and twelfth assignments complain of the submission of issues 1 and 2, which required the jury to find whether the El Paso & Southwestern coal car was in a reasonably safe

condition for use in said train, and whether the furnishing of the car in such condition was negligence and of the refusal of the court to submit certain special issues requested in this connection. The contention under these assignments is that the evidence shows that the said car was a foreign car, delivered to the defendant, loaded, for transportation over its line; that the duty of the defendant in the premise was to exercise ordinary care to inspect said car for defects that would make its transportation hazardous, and, if such defects were found, either refuse to transport the car or remedy the defects; that the issues submitted are not applicable to the facts of the case, and that the issues requested did call for findings on the specific question of inspection on which the liability of the defendant depended. It is the general duty of the master to furnish only such equipment and appliances to be used by the servant as are reasonably safe in the use to which they are to be subjected. This general duty applies to the acceptance for transportation of foreign cars coming to one carrier from another for through transportation. T. & P. Ry. Co. v. Archibald, 170 U. S. 669, 18 Sup. Ct. 777, 42 L. Ed. 1190. However, on account of the very nature of the business, this duty is discharged in reference to the acceptance and transportation of such cars if the carrier, before putting such cars in its trains, exercises ordinary care to inspect the same for any defects that might be discoverable by proper inspection, and, if such defects are found, either rejecting the car or remedying them; and it follows from this that, if there are latent defects not discoverable by such inspection, the master is not responsible for injury resulting therefrom. Baltimore & Potomac Railway Co. v. Mackey, 157 U. S. 91, 15 Sup. Ct. 491, 39 L. Ed. 624; M., K. & T. Ry. Co. v. Harris, 45 Tex. Civ. App. 542, 101 S. W. 508; I. & G. N. Ry. Co. v. Kernan, 78 Tex. 294, 14 S. W. 668, 9 L. R. A. 703, 22 Am. St. Rep. 52.

If the premise on which these assignments are founded be sound, that is, that the evidence conclusively shows that this car was a foreign car, it would certainly have been more appropriate for the court to have submitted the issue so as to conform to the concrete facts and specific rules of law applicable thereto. A., T. & S. F. Ry. Co. v. Myers, 63 Fed. 793, 11 C. C. A. 439. Do the facts support this premise? The car was known as an El Paso & Southwestern car. It was delivered by the defendant, empty, to the Colorado & Southeastern Railway Company, at Ludlow, Colo., on June 12th, to be loaded with coal. That road seems to have been a road connecting with the Colorado & Southern at Ludlow and extending up to the mining regions. It was inspected before this delivery by the inspector of the defendant, who found nothing wrong with it. It was again inspected at the mines at Hastings, a few miles from Ludlow, by the inspector for the Colorado & Southeastern, and no defect was found. The car came back to the Colorado & Southern from the Colorado & Southeastern, June 14th, loaded with coal and was again inspected by the inspector and found O. K. No details of the manner of inspection were shown; the inspectors merely testifying from their records that they inspected the car and found it O. K. Nothing further appears as to the movement of the car until it was picked up by the train on which the deceased was a brakeman on the night of his death, at Des Moines, N. M. It was carried by said train to Texline, and was in the yards at Texline a week or 10 days afterwards. We do not think this evidence conclusively shows that the said car was a "foreign" car. The fact that it was called an El Paso & Southwestern car might indicate that the car was owned by some such railway company, but, as stated, the evidence disclosed the defendant first handling it as an empty, delivering it to another road for loading, without a showing from whence it came, nor as to what was to be its final destination. If the car was owned by the El Paso & Southwestern Railway Company it may have been leased or loaned to the appellant, and in such case would, in respect to appellant's employés, be regarded as appellant's car. Labatt on Master & Servant (2d Ed.) 1074; Spaulding v. W. N. Flynt Mfg. Co., 159 Mass. 587, 34 N. E. 1134. The evidence as to the extent of its control of the car was within the appellant's knowledge, and, in the absence of a showing to the contrary, it will be presumed that the car was controlled by the appellant as part of its equipment. Labatt on Master & Servant (2d Ed.) 1068; 41 L. R. A. 100, note; G., C. & S. F. Ry. Co. v. Miller, 98 Tex. 270, 83 S. W. 182 (in point only by analogy). We do not think the evidence sufficient to make an issue of fact as to whether the car was a foreign car in the face of this presumption to the contrary; but if there was any issue of fact as to its true character, we may assume that the court decided against the appellant on this issue, in the absence of request for the submission of such issue to the jury.

[9] The thirteenth and fourteenth assignments complain of the failure of the court to submit an issue of accident in the general charge, and of the refusal of the court to submit the special issue thereon, requested by appellant. If the facts were sufficient to require the submission of an issue of accident, which we doubt, such facts do not present an affirmative défense, but constitute merely a negative of the issues as to whether the defendant was guilty of negligence which was the proximate cause of the injury. The affirmative answer to these issues involved necessarily a negative of the issue of accident. There is no doubt, under our decisions, but that if the facts were sufficient

to require it, and the case were submitted on a general charge, the defendant would be entitled to an instruction on this subject. However, we have recently held in the case of Texas Employers' Insurance Association v. Downing, 218 S. W. 121, paragraphs 14 to 16, that the court, in the submission of the case on special issues, is not required to submit issues as to mere negatives of the issues already submitted. We need not discuss the question further here, but refer to that case for a statement of our views on this subject. In a proper case the defendant would probably be entitled to a charge on accident to be considered by the jury in connection with the issues submitted. As we said in the opinion in the case cited, our holding is not free from conflict. In addition to the authorities cited in the opinion, as holding to the contrary, we add the case of K. C., M. & O. Railway Co. v. Swift, 204 S. W. 135. We overrule this assignment for this as well as other reasons, which will be stated in connection with our discussion of the next two assignments.

[10-12] The appellant requested the submission of issues as to whether the deceased was guilty of negligence in stepping on the pin lifter of the Erie car, and whether such negligence, if found, caused or contributed to his injuries; and the fifteenth, and sixteenth assignments complain of the refusal of the court to submit these issues. The issue of the deceased's negligence was submitted only in the charge of the court in issues 6 and 8, as follows:

"Issue No. 6. Was Edgar Rowe guilty of negligence the sole proximate cause of his death? Issue No. 8: Was Edgar Rowe guilty of contributory negligence?"

We do not believe the facts are sufficient to have required the submission of the issue of negligence on the part of the deceased. T. & P. Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 191, 193; Central Vermont Railway Co. v. White, 238 U. S. 507. 35 Sup. Ct. 867, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Ft. Worth & Denver City Ry. Co. v. Stalcup, 167 S. W. 279 (writ of error was denied in this case by the Supreme Court of this state and by the Supreme Court of the United States); K. C., M. & O. Ry. Co. v. Starr, 194 S. W. 637.

The burden of proof was on the defendant on such issue, and the presumption is against such fact; a finding that the deceased negligently stepped on the pin lifter would be wholly conjectural. The fact that he either fell or stepped on the pin lifter is itself a matter of conjecture, and based solely on the opinion of the trainmen that the air hose would not have been uncoupled except by the uncoupling of the train itself in this way. But if we assume that the train was uncoupled by deceased's stepping or falling on the pin lifter, it is still wholly con-

jectural as to whether this act was the result of his own negligence or of accident, or the result of his being so jarred by the train running over the coal as to lose his balance and step or fall on the pin-lifting device. We do not think a finding of negligence based on such conjectural facts would be warranted in the face of the presumption that the deceased, who was a competent and experienced brakeman, was not negligent in such matter. We are further of the opinion that the defendant did not so plead and present the specific act of negligence here sought to be submitted as to be fairly entitled to complain of the refusal of the court to submit the issue. The defendant pleaded negligence of the deceased at great length, the pleading of this issue alone taking up about eight typewritten pages of the transcript. Notwithstanding this great detail in pleading, this specific act of negligence is not directly mentioned at all, except that it may be possibly inferred, from an indirect and obscure reference contained in paragraph 20 of the answer, devoted to presenting more specifically other acts and facts of negligence, that the pleader had this fact in mind. The defendant's objections to the charge of the court occupy 27 typewritten pages of the transcript. It requested 46 special instructions and issues. These and the exceptions to the action of the court thereon occupy 100 pages of the transcript. The specific issue, if it was in the case, was so obscured by the manner of pleading and in the multitudinous objections and charges that were presented to the court that the appellant ought not to be entitled to urge the refusal of the court to submit it as a reason for the reversal of the case.

[13] We are also of the opinion that under the facts of this particular case, there was in any event no harm in failing to submit more specifically the issues of accident and contributory negligence. It was incumbent on the plaintiff to show facts from which it could be reasonably concluded that the falling of the coal resulted in some way in the deceased's falling from the train. In the very nature of the case a general conclusion as to this issue was just about as far as the jury could be expected to go, and we cannot believe that any harm could have resulted in the refusal of the trial court to require the jury to go into further details as to matters which were entirely conjectural and impossible of definite answer. We do not wish to be understood, however, as holding, as the appellee seems to think we have held in other cases, that the court ought to submit cases to the jury on mere abstract general issues. Ultimate issues only ought to be submitted, but these should descend from abstract generalities, and come down to the very facts of the case and particular rules of law applicable to them. But under the

peculiar facts of this case we cannot see that any harm could have resulted from the manner in which the case was submitted to the jury.

[14] The court charged the jury that the burden of proof was on the plaintiff to make out her case by a preponderance of the evidence; also that the burden of proof upon each special issue was upon the party having the affirmative thereof and that if the affirmative of any special issue "is not proved by a preponderance of the evidence, you will answer such special issue in the negative." By the seventeenth and eighteenth assignments of error the appellant complains of this manner of the submission of the burden of proof and of the refusal of the court to give requested instructions by which the jury would have been informed specifically that the burden of proof was on the plaintiff as to certain issues designated by reference to their number. While this manner of informing the jury as to the burden of proof might, in some cases, be confusing (Q., A. & P. Ry. Co. v. Novit, 199 S. W. 496), we do not think it possible that the jury could have been confused by the charge in this particular instance.

The matter embraced in the special issue requested and referred to in the nineteenth assignment was sufficiently submitted to the jury, in the general charge.

[15] The twentieth assignment complains of the refusal of the court to submit the following special issue, requested by appellant:

"Did the coal, which fell from the El Paso & Southwestern car at the time in question fall as the result of the chain, if any, on the door or shaft breaking, if it did break, or did it fall as the result of said door or shaft being tied with baling wire, if it was so tied? In answering this issue you will state which."

We do not think it would have been proper for the court to have submitted this issue in this form. The plaintiff alleged that the defendant was guilty of negligence in providing insufficient fastenings for the door on the car, and did not specifically plead in just what the defect consisted. The brakeman who fastened the door up, after the coal was dumped, and before the train proceeded on its way, testified that the chains which were supposed to hold up the two rear doors of the El Paso & Southwestern car were broken off from the doors and hanging down, unwound, showing that the doors had not been fastened by these chains; that the door which had not dumped was fastened up with a baling wire, and a broken baling wire was on the door which had dumped. The defendant's witness, who inspected the car at Texline on the next day, testified that the chain was broken, but he did not say whether it was unwound from the shaft or not; that he saw no baling wire, but the door was then fastened up with a ⅝-inch

"bleed wire," which the witness in other parts of his testimony occasionally refers to as a "bleed rod"; that such fastening did not hold the door up as tight as if it were connected up by the regular ⅝-inch chains; that when cars are loaded considerable weight is carried on the fastenings, and that the M. C. B. rules require that the doors be closed by ⅝-inch chains. We do not think that the plaintiff's right to recover would be dependent on the specific finding that the door was fastened up by a baling wire. The evidence is sufficient to have warranted a finding that the door was not fastened up by the proper connecting chains, but may have been fastened by a baling wire, bleed wire, or in some other unknown manner; and the circumstances are sufficient to warrant a finding that the failure of the defendant to have the door fastened with the regular and safe appliances provided for such purpose was negligence. But, even if the plaintiff's case depended on a showing that the defect in the fastening consisted in using a baling wire to fasten up the door, the proper method of submitting the issue would have been to require a finding as to whether the door was so fastened and caused thereby to dump, and the jury should not be forced to the alternative of deciding just how it was fastened. Further, we are not prepared to hold that there would be no issue of negligence, even if it should be found that the door fell as a result of the breaking of the chain. The very fact that such chain broke and precipitated a large amount of coal on the track, an unusual and hazardous happening, would show that there was some defect in the fastening. It was not shown how long this car had been in use, nor when and how inspection of this very appliance for holding up the doors was provided for. These were all matters within the knowledge of the defendant. And there are authorities which would support the conclusion that these circumstances would be sufficient to make an issue of negligence. McCray v. G., H. & S. A. Ry. Co., 89 Tex. 168, 34 S. W. 97; Washington v. M., K. & T. Ry. Co., 90 Tex. 314, 38 S. W. 765; Gammage v. Gamer Co. (Com. App.) 209 S. W. 389; M., K. & T. Ry. Co. v. Cassady, 175 S. W. 796. Writ was refused in this case, and the Supreme Court wrote a short opinion, in which it was declared that decisions of this character did not depend on the application of the doctrine of res ipsa loquitur, but on the holding that "the circumstances of a particular accident may themselves furnish proof of negligence." This was the holding in the case of Railway Co. v. Stalcup, supra, in which case the Supreme Court of the United States denied a writ of error. However, we do not place our holding on this ground, but on the reasons first announced.

The twenty-first and twenty-second assign-

ments of error assail the verdict of the jury as being contrary to the evidence and as awarding excessive damages. We think the evidence is sufficient to support the findings of the jury.

We have found no error assigned which in our opinion requires a reversal of the case, and the judgment will be affirmed.

### On Motion for Rehearing and for Additional Findings.

Appellant's motion for rehearing has been earnestly urged by written and by oral argument. We have carefully considered it, and have concluded that it should be overruled. All of the contentions presented therein have been sufficiently discussed, we think, in the original opinion, except as to two matters which we think require further statement and discussion:

In the argument on presentation of that part of the motion, complaining of our overruling the seventeenth and eighteenth assignments of error, an entirely new point has been presented, the decision of which requires a more extended statement than we made in the original opinion. These two assignments are in reference to the charge of the court on the burden of proof, and the refusal of the court to give a special instruction requested in reference thereto. In paragraph 1, subd. 1, of the court's charge, the jury were instructed that—

"The burden of proof is on the plaintiff to make out her case by either positive or circumstantial evidence, or both, and by a preponderance of the evidence," etc.

The second paragraph of this subdivision of the charge reads as follows:

"The burden of proof upon each special issue submitted to you is upon the party having the affirmative of said special issue. If the affirmative of any special issue is proved by a preponderance of the evidence, you will answer such special issue in the affirmative, and if the affirmative of any special issue is not proved by a preponderance of the evidence, you will answer such special issue in the negative."

Objection was made to this charge in the language reproduced in the nineteenth paragraph of the motion for new trial in the lower court, and which is the eighteenth assignment of error on this appeal; this assignment being as follows:

"Because the court erred in instructing the jury in section 2, paragraph 1, of his main charge, wherein the court instructed the jury that the burden of proof upon each special issue submitted was upon the party having the affirmative of such special issue; the error being that the jury being unlearned in the law could not and did not probably understand upon whom the affirmative of any issue might be. This being true, the court, in said section 2, paragraph 1, should specifically have instructed the jury as to what special issues the

burden of proof was upon the plaintiff, and as to what special issues the burden of proof was upon the defendant; that is, the court, in his charge in question should have singled out the special issues upon which the burden of proof was upon the plaintiff, and should have instructed the jury that the burden of proof was upon the plaintiff relative to said issues, and should likewise have done so relative to the special issues upon which the burden of proof was upon this defendant. Hence the error of the court."

The proposition under this assignment is in practically the same language as that of the assignment itself.

[16] The seventeenth assignment is as follows:

"Because the court herein erred in refusing to give in charge to the jury this defendant's specially requested instruction No. 19½, which sought to instruct the jury that the burden of proof was upon the plaintiff relative to special issue No. 1, to prove that the car furnished was not in a reasonably safe condition; and, relative to special issue No. 2, submitted that the burden was upon the plaintiff to prove that the defendant was negligent; and, relative to special issue No. 3, submitted that the burden was upon the plaintiff to prove said issue; and, relative to special issue No. 4, that the burden of proof was upon the plaintiff. And the defendant says that this special charge No. 19½ should have been given, for it correctly instructed the jury as to the burden of proof on these four issues, which were material issues, and that it would have cured the error contained in the court's main charge on the question of burden of proof, and which is pointed out in paragraph 19 herein [referring to the nineteenth paragraph of the motion for new trial, which is the eighteenth assignment of error just quoted]."

Special issue No. 1, as submitted by the court, reads as follows:

"Was the El Paso & Southwestern coal car, which was furnished to the crew in charge of the train at the time and place alleged in plaintiff's petition, in a reasonably safe condition for the said crew and Edgar Rowe to handle in the manner and on the road over which they undertook to haul it? Answer Yes or No.",

[17-19] On argument of the motion for rehearing it is for the first time suggested that the charge on the burden of proof as quoted above is positively erroneous, in that as the result of the manner of the submission of the first issue the burden of proving that the car was in a reasonably safe condition was put upon the defendant. We think the charge was erroneous as now contended, and if the point is sufficiently raised in the brief to be entitled to consideration the case must be reversed on these assignments.

The objection to the charge in effect admitted that the charge was correct in terms, but, on account of its generality and the fact that the jury was unlearned in the law, might not be understood by the jury, which objec-

tion we thought, and still believe, to be untenable. This method of statement of the burden of proof is one quite generally used by the trial judges, and it evidently did not occur to the court or to the attorneys that on account of the peculiar manner of the submission of one of the issues the application of the charge did affirmatively place the burden on the wrong party. So we do not think the objection to the charge or the proposition thereunder are sufficient to raise this point. This objection, not having been made to the charge of the court at the time, was waived (article 1971, R. C. S.), and the appellant's right to have it further considered is dependent on the answer to the question as to whether it could be raised under the seventeenth assignment, based on the refusal of the requested special instruction, which did correctly state the law as to the burden of proof on this issue. Some of the Courts of Civil Appeals have held that since the failure to object to the incorrect charge of the court is a waiver, amounting to an approval of the charge, and there would be a conflict between the general charge and the special charge, if given, the party so failing to object cannot assign error on the refusal of the court to give the correct special instruction. Railway Co. v. Barnes, 168 S. W. 992, and I. & G. N. Ry. Co. v. Bartek, 177 S. W. 139, are illustrative of these holdings. In the Bartek Case Chief Justice Key dissented, and the Commission of Appeals in deciding the case intimated that if the special instruction had been presented in due time such charge "should be held sufficient as an objection to the court's charge on that subject, even though defendant failed to file objections to the charge." I. & G. N. Ry. Co. v. Bartek (Com. App.) 213 S. W. 602. This court has dissented heretofore from the rule announced in the Barnes Case and those which follow it. Rabinowitz v. Smith Co., 190 S. W. 199; Railway Co. v. Alcorn, 178 S. W. 833. So we feel bound to consider the point if it is raised by the seventeenth assignment, or any proposition thereunder. The reason stated in the assignment itself as to why it was error to refuse the charge was:

"That it would have cured the error contained in the court's main charge on the question of burden of proof, and which is pointed out in paragraph 19 herein (being the appellant's eighteenth assignment of error)."

The proposition under the assignment is the same as the assignment itself. Appellant, in presenting the eighteenth assignment states that it is "in aid of assignment 17." So it will be seen that the point presented by both these assignments and the propositions thereunder is the same; that is, in effect that the charge, while correct in terms, might be misunderstood by the jury, and that the objection now urged is not presented by these assignments or any proposition thereunder.

It is well settled, we think, that the appellate courts, in considering assignments of error, are confined to the reasons assigned as contained either in the assignments themselves or in germane propositions thereunder. M., K. & T. Ry. Co. v. Maxwell, 104 Tex. 632, 143 S. W. 1147; Id., 59 Tex. Civ. App. 139, 130 S. W. 728; Ariola v. Newman, 51 Tex. Civ. App. 617, 113 S. W. 157; Western Union Telegraph Co. v. Vance, 151 S. W. 910, par. 15; McCall v. Elliott, 159 S. W. 872; St. Louis Railway Co. v. Drahn, 143 S. W. 357. We conclude, therefore, that the assignments should be overruled.

[20] In the original opinion we expressed a doubt as to whether the evidence was sufficient to raise the issue of accident, and the appellant complains of our failure to make an affirmative finding on this matter. We think the appellant is entitled to such a finding, and after a review of the evidence have concluded that it is sufficient to raise the issue of accident in this way. The engineer of the train testified that the coal dumped about a mile back of where Rowe fell, and had all "rolled out up to the point where he fell." This evidence is not in accord with that of other witnesses, but the defendant of course would have the right to have the jury pass on its truth. The tendency of the evidence of this witness was to show that the dumping of the coal, which was the immediate result of the only negligence charged against the defendant, had no connection with the fall of the deceased, and to show that such fall was the result of some other cause. There is a presumption, of course, against the existence of any negligence on the part of the deceased, which may have caused him to fall, and we have held, and still adhere to that ruling, that the evidence does not raise an issue of negligence on Rowe's part. This evidence and the presumptions thus tending to eliminate other causes for the fall, the only one remaining to account for it is that of accident, and this theory is compatible with the other facts, being sufficient to account for the separation of the train and the air hose, etc. While we have concluded that the issue is thus presented by the evidence, we still think that it was merely a negative of the issue submitted as to whether the negligence of the defendant was the proximate cause of the deceased falling from the train. The very fact that a general denial is a sufficient pleading on which to base the issue proves this. We do not care to add anything further to what we have said on this subject in our original opinion and in the opinion in the case of Texas Employers' Insurance Association v. Downing, 218 S. W. 121, paragraphs 14–16.

We are requested in the motion for additional findings or fact to copy in our opinion the five typewritten pages of the paragraph of the answer, in which the defendant pleads

negligence on the part of the deceased, Rowe, and which pleading we said in our opinion only obscurely stated the particular act of negligence upon which defendant sought to have submitted special issues. We are also asked to make certain findings as to defendant's objections and exceptions to the court's charge. We decline to comply with these requests. Our statements as to such matters are not findings of fact, and will not prejudice the right of appellant to have our construction of the pleading and such matters corrected by the Supreme Court if that court should conclude that we were in error in our conclusions.

We are also asked to point out the testimony of any witness to the effect that there would be any jarring of the cars as a result of running over the coal on the track, or testimony to the effect that the tendency of the wheels running over the coal would be to whip up the air hose, hanging down some distance behind such wheels. Our attention has not been called to the testimony of any witness as to these facts, but we think that such conclusions are deducible from the application of natural laws, known to all men, to the facts in evidence.

The requests for other findings are as to mere evidentiary facts, which we do not consider it necessary to set out.

With this statement, both motions referred to are overruled.